THE RUTLAND AND BURLINGTON RAILROAD COMPANY *v.* N. B. PROCTOR AND W. J. ODELL.

### *Corporation.*

The plaintiffs (a railroad corporation) purchased certain property for a purpose which was·perhaps unauthorized by their act of incorporation and beyond the limit of their corporate powers, but to which neither the stockholders or the state had- objected; and they afterwards sold the same property to the defendants. *Held*, that if the plaintiffs had in their purchase of the property, exceeded their corporate powers, it did not, under the circumstances of this case, constitute any defense to an action brought against the defendants to recover the price they had agreed to pay for the property, and for the repairs the plaintiffs had made upon it after its sale to the defendants, and at their request.

ASSUMPSIT for goods sold and delivered, and for work and labor performed, &c. The parties agreed upon the facts in the case, which were substantially as follows:

The plaintiffs' company was at the time of the sales hereafter mentioned, organized and acting under its charter and the various acts in amendment thereof, for the purposes and with the powers named in and conferred by said charter and acts. In the summer of 1852, the plaintiffs purchased of the Champlain Transportation Company the following named steamboats and property then used

R. & B. R. Company *v.* Proctor et al.

in navigating Lake Champlain, and in the carrying of passengers and freight to and from St. John's to Whitehall and intermediate ports, to wit; the steamers Whitehall, Burlington, United States, Saranac, Francis Saltus and Winooski, with their furniture, rigging and apparel, a large quantity of wood lying at various points on Lake Champlain, to be used and which was used in running said boats, several acres of land lying on Shelburne Point, on which were standing sundry repair and machine shops with a large amount of tools and stock therein; which premises, shop, stock and tools, were used for the purpose of repairing said steamboats, the harbor for which was adjacent to said shops. The purchase of said boats and property was made for the purpose of enabling the plaintiffs to compete with other lines of travel and freight between Rouse's Point and the cities of Boston and New York, and was not necessary for any other purpose.

In August, 1853, the defendants bought of the plaintiffs one of said steamers, the Saranac, and after the purchase of the steamer they applied to the plaintiffs to buy, and did buy, so ar fas the plaintiffs could convey the title, various articles of furniture for said boat, at prices agreed upon, and for the recovery of which this suit was brought; all of which articles were purchased of said transportation company by the plaintiffs at the time of the other purchase above stated and were then paid for by the plaintiffs. The labor, for the recovery of which the action was also brought, was performed by the plaintiffs or their servants, by way of repairing said steamer Saranac at Shelburne Harbor after the sale of the boat to the defendants, and at their request.

Upon the facts so agreed upon, the county court at the November Term, 1855, — PECK, J., presiding, — rendered judgment, *pro forma*, in favor of the plaintiffs for the amount of their claim. Exceptions by the defendants.

*Underwood & Hard* and *Roberts & Chittenden*, for the defendants.

The contract upon which a recovery is sought was one not authorized by the plaintiffs' charter, and no recovery can be had upon it at law. The charter of the plaintiffs' company does not authorize them to deal in the buying or selling of steamboats or their appurtenances.

If the contract had not been executed on the part of the plaintiffs, its execution could not have been enforced by the defendants. This rule ought to be reciprocal. Angell & Ames on Corp., secs. 111, 232: *Farmers' Loan & Tr. Co.* v. *Carroll,* 5 Barb. 613, 640; *Penobscot B. Corp.* v. *Lawson,* 4 Ship. 224; *Betty* v. *Lessee of Knowles,* 4 Pet. 152; *Coleman* v. *Eastern Co. R. Co.,* 4 R. & C. Cas. 512; *Hart. & N. H. R. Co.* v. *Caswell,* 5 Hill 383; *Graham* v. *Berkenhead & Co.,* 6 L. & Eq. 132; *Union Lock & Canal Co.* v. *Town,* 1 N. H. 44; *Middlssex S. Co.* v. *Lock,* 8 Mass. 268; *Munt* v. *Shrewsbury & Chester R. Co.,* 3 L. & Eq. 144; *Atty. Gen.* v. *Corp. of Norwich,* 16 Sim. 225; Coll. on Part., secs. 198, 212; *Livingston* v. *Lynch,* 4 J. Ch. 473; *Davis* v. *Hawkins,* 3 M. & S. 488; *East Anglican R.* v. *E. Co. R.,* 7 L. & Eq. 505; *Frewin* v. *Lewis,* 18 Eng. Ch. 253 – 4; *River Dun. Nav. Co.* v. *N. M. R. Co.,* 1 R. & C. 155.

———— ————, for the plaintiffs.

The opinion of the court was delivered by .

REDFIELD, CH. J. The plaintiffs being a railway company, (whose road extends from Lake Champlain to Connecticut River with the usual franchises and immunities, and under the ordinary limitations and restrictions,) in order to compete in business, and to improve the profits of their road, in all probability in good faith, purchased the boats and accessories of the Champlain Transportation Company, a corporation created for carrying passengers and freight upon Lake Champlain. Subsequently they sold one of these boats and the furniture to the defendants, and after sale, at the defendants' request, repaired the boats and its furniture at one of the machine shops, formerly belonging to the Transportation Company. This action is brought to recover the value of such furniture and repairs.

The defense is, that the contract of purchase by which the plaintiffs' company acquired the title of this boat and furniture, sold the defendants, and of the shop at which the repairs were done, was beyond their powers, or as denominated in the books, *ultra vires.* It does not appear that the stockholders of the plain-

tiffs' company have ever objected to their making the purchase, or running the boats in connection with their road.

If we regarded the question properly before the court for determination, we should not at first view certainly, be inclined to question that such a purchase is beyond the powers of the company. And if the stockholders had applied to a court of equity at the time, to have the directors enjoined from making the purchase, the current of English decisions would probably have justified the injunction. And possibly had the state interfered by way of *scire facias* or *quo warranto*, the excess of power thus exercised by the company, might be regarded as sufficient reason for revoking their charter. We say this may possibly be so regarded, but it is not common in practice for the courts to declare the forfeiture of a railway charter when the directors have proceeded in good faith, and the property of the company is not brought in peril. But no such step has been taken, nor is this an action by which the company are sought to be charged for a contract beyond the fair scope of their charter.

The defendants seek to make this defense upon the ground that the excess of power thus assumed by the company is illegal, and renders all contracts connected with the transaction inoperative by reason of such illegality.

If there had been a positive prohibition of entering into a particular class of contracts, and especially if such contracts had been declared void by the charter of the company, or the general laws of the state, most unquestionably no action would lie upon the prohibited contract.

But when no such prohibition exists, and it is only by construction of the charter that a class of contracts are declared to be beyond the power of the company, and when upon this point there is such reasonable ground of doubt as to induce a court to suppose the directors may have acted in good faith, and where the question is raised by one having no interest in it, except for purposes of unjust advantage, courts have never been inclined to listen to the objections.

In the present case, the most favorable view for the defendants, as it seems to us, is that the directors of the plaintiffs' company

exceeded their powers in making the purchase, and that therefore the title of the boats and apparatus did not vest in the company, and consequently that the funds which the directors appropriated for the purpose, were misapplied, and the directors may be compelled to account for them to the company for the benefit of the stockholders. And possibly the funds so misapplied might have been pursued into the hands of the transportation company by showing the insolvency of the directors; but this must have been done at once, and any considerable acquiesence in the transaction will prevent the stockholders or the company from pursuing the funds. And in that case the title to the property will have passed from the transportation company, *prima facie*, into the directors or natural persons. In such a state of the title the directors might most undoubtedly dispose of the property, and collect the avails as a legitimate mode of restoring the funds misapplied to the company. And for this purpose they might most unquestionably take the securities upon sale of the property, payable to the company, or stipulate that the purchaser should pay the company. And this, so far from being a continuance of the perversion of the charter powers is, the surest and only obvious mode of restoring the funds to their proper channel.

The only wrong in the directors is in having exceeded their powers, and the transaction with the defendants, so far as it goes, will tend to restore a portion of the money to its rightful proprietor; and of this the defendants ought not to complain, as they are confessedly solicitous to bring the directors of the plaintiff's company back to their legitimate functions. And if they should dispose of all the property purchased in this mode, in the manner this is sold to the defendants, it will go far to restore them to their appropriate place — the treasury of the plaintiffs — for the benefit of the company and its stockholders.

Judgment affirmed.