THE WHITNEY ARMS COMPANY, Respondent, *v.* SAMUEL L. M. BARLOW et al., Appellants.

Where, in an action against trustees of a manufacturing corporation to enforce the liability imposed upon them by the general manufacturing act, for a failure to make, publish and file the annual report required by said act (§ 12, chap. 40, Laws of 1848, as amended by chap. 333, Laws of 1853), it appears that a report professedly in compliance with the statute was made and filed, in the absence of any evidence of an attempt to deceive or to evade the statute, such report will receive a liberal interpretation and the benefit of any doubt as to its true intent, and meaning will be given to the trustees sought to be charged.

The capital stock of a corporation was $300,000; all of which had been issued in payment for patent rights; a report was made and filed stating that "the amount of the capital stock of this company, and which has been issued for the purchase of patent rights, and which has not been paid in cash, is $300,000." *Held*, that this was a sufficient compliance with the statute to save the trustees from liability.

In such an action the trustees cannot avail themselves of a defence not

personal to them, but going to the foundation of the claim and cause of action against the corporation, which would not be available in its favor; and where a valid debt exists against it, to which it has no good defence, legal or equitable, the trustees, if in default, are chargeable with its payment.

Where a corporation has fully performed a contract on its part to manufacture and deliver certain articles, it is no defence to an action brought to recover the purchase-price, that the contract was not within or incidental to its chartered powers and privileges or the purposes for which it was created.

The plea of *ultra vires* as a general rule will not prevail, whether interposed for or against a corporation, when it will not advance justice, but on the contrary will accomplish a legal wrong.

The authorities upon this subject collated.

Accordingly, *held,* in an action brought under said statute by one manufacturing corporation against the trustees of another to recover the contract-price for goods sold and delivered to defendant's corporation, that the objection that plaintiff was not authorized to manufacture and sell the goods, or to enter into the contract, was not available as a defence.

*Whitney Arms Co.* v. *Barlow* (6 J. & S., 554) reversed.

(Argued October 1, 1875; decided October 8, 1875.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff entered upon a verdict. (Reported below, 6 J. & S., 554.)

This action was brought against defendants as trustees of the American Seal Lock Company, a corporation organized under the general manufacturing act (chap. 40, Laws of 1848), to enforce the statutory liability to pay the debts of said corporation because of an alleged failure to make, publish and file annual reports.

Said corporation was organized in May, 1871. Its capital stock was $300,000, all of which was issued to pay for certain patent rights purchased by the company. No report was made and filed until January 19, 1872, when a report was made, verified and filed containing the following statement:

"The amount of the capital stock of this company, and which has been issued for the purchase of patent rights and which has not been paid in cash, is $300,000; amount of existing debts, $45,393.88."

A report, similar as to the statement of capital stock, was filed January 18,. 1873. On the 6th October, 1871, said corporation entered into a contract with plaintiff by which the latter agreed to manufacture and deliver 20,000 railroad locks to be paid for sixty days after delivery. Plaintiff made and delivered 10,000 locks under the contract when, by mutual agreement, the contract was suspended as to the residue. The evidence as to the time of delivery was conflicting and uncertain, but the balance of testimony was to the effect that a few were delivered in December, 1871; the greater portion in January, and a few in February, 1872. Two notes were given by defendant's company for the purchase-price at two months, one dated January 24, 1872, the other January 31, 1872.

Plaintiff is a corporation organized in the State of Connecticut, as declared by its charter, "for the purpose of manufacturing every variety of fire-arms and other implements of war, caps, cartridges, balls and like munitions of war applicable to the use of fire-arms, and all kinds of machinery adapted for the construction thereof and otherwise."

The court directed a verdict for the plaintiff for the amount of the indebtedness, which was rendered accordingly.

*W. W. MacFarland* for the appellants. Plaintiff cannot recover on the ground that no report was filed in 1871, as it was not proved the debt accrued during this default. (*Garrison* v. *Howe*, 17 N. Y., 458; *Jones* v. *Barlow*, Ct. App.; *Mer. Bk.* v. *Bliss*, 1 Robt., 301.) Plaintiff had no legal capacity to enter into the contract which is the foundation of this action. (*Berlin* v. *New Britain*, 9 Conn., 175; *Ocum Co.* v. *Sprague Mfg. Co.*, 34 id., 531; *City of New London* v. *Brainard*, 22 id., 552; *Talmadge* v. *Pell*, 3 Seld., 328; *First Nat. Bk. of Lyons* v. *Ocean Nat. Bk.*, Ct. App.; *H. and N. H. R. R. Co.* v. *Creswell*, 5 Hill, 383; *Madison* v. *Ind. R. R. Co.*, 21 How. [U. S.], 441; *E. Ang. R. Co.* v. *E. Cos. R. Co.*, 7 L. and Eq., 505.) Defendants are not estopped in law from maintaining that the contract was ille-

gal and void. (*Mer. Bk.* v. *Bliss*, 1 Robt., 391; *Garrison* v. *Howe*, 17 N. Y., 458; *Nimmons* v. *Toppan*, 2 Swe., 652; *Dabney* v. *Stevens*, id., 415; Chit. on Con. [11th Am. ed.], 972; Bigelow on Estoppel, 466; *Gray* v. *Hook*, 4 Comst., 449.)

*D. M. Porter* for the respondent.    Defendants' liability is in the nature of tort. (*Strong* v. *Sproul*, 4 Daly, 326; *Andrews* v. *Murray*, 33 Barb., 354; *Miller* v. *White*, 50 N. Y., 137; *Mer. Bk.* v. *Bliss*, 35 id., 412.)    Defendants are liable for the indebtedness existing at the time of the default, notwithstanding any changes in the state of the original indebtedness. (*Miller* v. *White*, 50 N. Y., 137; *Vincent* v. *Sands*, 1 J. & S., 511; *Deming* v. *Puleston*, id., 231; *Wright* v. *Storrs*, 6 Bos., 600; affirmed, 32 N. Y., 691.)    Defendants are estopped from disputing the right of plaintiff to enter into the contract. (*Moss* v. *Rossie Lead M. Co.*, 5 Hill, 137; *DeGroff* v. *Am. L. Thread Co.*, 21 N. Y., 127, 128; 2 Cow., 664; *Steam Nav. Co.* v. *Weed*, 17 Barb., 378; *Mott* v. *U. S. Trust Co.*, 19 id., 588; *Palmer* v. *Lawrence*, 3 Sandf., 170; *Chester Glass Co.* v. *Dewey*, 16 Mass., 102.)

ALLEN, J.    But a small, if any, portion of the debt for which a recovery was had accrued prior to the making and publishing of the report by the corporation in January, 1872, and if that document was in conformity to the statute requiring annual reports by manufacturing corporations, and a substantial compliance with the requisition of the act, the appellants are entitled to a reversal of the judgment.

The trustees of a manufacturing corporation are chargeable with the debts of the company upon failure of the corporation within twenty days from the first day of January in each year to make, publish and file, as prescribed by the act, a verified report, "which shall state the amount of capital and of the proportion actually paid in, and the amount of its existing debts." (Laws of 1848, chap. 40, § 12.)    At the time of the enactment of this law payment of the capital

stock of this class of corporations was required to be in money. By a subsequent statute (Laws of 1853, chap. 333) trustees of such corporations were authorized to purchase mines and other property, and to issue stock to the value thereof in payment therefor. The same statute enacted that in all statements and reports of the company to be published the stock so issued should not be stated or reported as being issued for cash paid in to the company, but should be reported in this respect according to the fact. The form of the report, as prescribed by the twelfth section of the original act (*supra*), was thus modified in all cases where the whole or a part of the capital stock was issued in payment for property purchased instead of for cash. The reports should in all essential particulars comply with these statutes. The facts need not necessarily be stated with technical or grammatical precision and accuracy, but they must substantially appear and be verified by the oath of the president and a majority of the trustees, and so distinctly stated that if untrue perjury could be assigned or an action maintained by any one sustaining legal injury from the misstatement.

The reports of corporations should receive a reasonable interpretation and excessive nicety or exactness should not be exercised in bringing them to the test of the statutes.

It cannot be denied that the report made by the American Seal Lock Company in 1872 is ambiguous, and it is very plausibly urged that it is entirely consistent with a capital stock greatly in excess of the amount stated as having been issued on the purchase of patent rights, as well as with the other fact that there was capital stock of the company for which cash had been paid in. The argument is that, leaving out the first copulative, the statement is, in terms, that the amount of the capital stock which had been issued for the purchase of patent rights, and which had not been paid in cash, was $300,000, and that such statement would have been literally true if the capital stock had been $1,000,000 and all but the $300,000 had been paid for in cash, or had not been paid for at all. It is then said that the insertion of the copu-

lative "and," so as to make it read that the capital stock of the company *and* which had been issued for the patent rights, etc., does not alter the sense upon any grammatical interpretation, or as it would be understood by the casual or ordinary reader, or those for whose benefit and protection the report and publication are required.

But the statute is in one sense and for some purposes, as adjudged by this court, of a penal character, in so far as it subjects the trustees to liability for the debts of the corporation for their neglect to make the report; and while it is also remedial as it confers upon the creditor a remedy for his debt and takes from the governing body of the corporation the shield and protection of the corporate organization and holds them to a personal liability for debts contracted, the reports and statements of the corporation, made and published professedly in compliance with the statute, should receive a liberal interpretation and the benefit of any doubt as to the true sense and meaning of the document be given to the trustees sought to be charged. This is a reasonable rule in the absence of any evidence, in or out of the report, of an intent to evade the statute and put forth a report false or deceptive; and when the report, read and interpreted as claimed by the trustees, is true in fact. The court is of the opinion that the report now under review, notwithstanding the criticism to which it is fairly subject, should, in the application of these principles and in view of the fact that the entire capital of the corporation was, at the time it was made, but $300,000, and the whole amount had been issued in payment for patent rights, be deemed a fair and full compliance with the statute, thus saving the forfeiture which the trustees, upon any other interpretation, would have incurred. In any view of the report, it did not exaggerate the resources and condition of the company.

As it is left in doubt whether some portion of the debt did not accrue during the default of 1871, and as other questions may arise, it is necessary to consider the other objections taken by the appellant to the judgment.

It must be conceded that the manufacturing and vending of "railroad locks" is not within the purposes for which the plaintiff was incorporated, or within the powers conferred by its charter. Neither is such business incidental to the purposes of the incorporation, or in any way necessary to, or as far as appears even an aid in the exercise of the powers conferred upon the plaintiff by its constitution, so that it could be regarded as among the implied powers granted by the legislature and assumed by the corporators.

Did the question now made arise upon an application by the stockholders and corporators to restrain the corporate agents from applying the corporate funds to purposes foreign to the corporation, or engaging in business outside of that for which the company was formed, or on proceedings by the sovereign power to annul the charter for an abuse of the powers granted, or in a proceeding to enforce and for the performance of an executory contract, where, upon a rescission or annulling the agreement, both parties would have the same position as if no contract had been made, the rules of decision would be different from those which must prevail in the present action. In either of the cases suggested it is very likely the courts would be compelled to give full effect to the objection and hold the business unauthorized and a violation of the charter, and a forfeiture of the chartered rights and the contract null, and refuse to perform it or give effect to it. The manufacture of the locks, or contract to sell them to the Seal Lock Company, were not acts immoral in themselves or forbidden by any statute, neither *mala in sese* or *mala prohibita*, so as to make the contract illegal and incapable of being the foundation of an action; such a contract as the law will not recognize or enforce, but applying the maxim, *ex facto illicito non oritur actio*, leave the parties as it finds them.

When acts of corporations are spoken of as *ultra vires*, it is not intended that they are unlawful or even such as the corporation cannot perform, but merely those which are not within the powers conferred upon the corporation by the act

of its creation, and are in violation of the trust reposed in the managing board by the shareholders, that the affairs shall be managed and the funds applied solely for carrying out the objects for which the corporation was created. (*Earl of Shrewsbury* v. *North Staffordshire R. Co.*, L. R. 12, 1 Eq., 593; *Taylor* v. *Chichester and Midhurst R. Co.*, L. R., 2 Exch., 356; *Bissell* v. *Mich. C. R. Co.*, 22 N. Y., 258.).

Whether the contract as originally made was *ultra vires* is not a very important inquiry at this time. If it was, the State under whose sovereignty it dwells and by whose act and favor it exists, has no interest in arresting its action for the recovery of moneys equitably due upon a contract fully executed and a work fully accomplished, whatever may be its right to annul its charter. The shareholders, whose confidence has been abused and whose funds have been diverted from their proper use, have a direct interest in reclaiming and restoring to proper custody and applying to legitimate uses the funds which have been diverted and improperly used for purposes *de hors* the legitimate business of the corporation. The plea of *ultra vires* should not as a general rule prevail, whether interposed for or against a corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong.

Here, as between two corporations, the debtor and creditor corporation, the contract has been fully performed by the creditor, the plaintiff in this action, and the Seal Lock Company has received the full consideration of its promise to pay. The plaintiff has parted with its property to the latter corporation, and unless a legal liability exists on the part of the latter to pay, the plaintiff can neither reclaim the property or recover compensation, and under this technical plea a great wrong will be perpetrated. A purchaser who acquired by contract, and under an agreement to pay for it, the property of a corporation, cannot defeat the claim for the purchase-price by impeaching the right of the corporation to become the owner of the property. One who has received from a corporation the full consideration of his engagement to

pay money, either in services or property, cannot avail himself of the objection that the contract thus fully performed by the corporation was *ultra vires*, or not within its chartered privileges and powers. It would be contrary to the first principles of equity to allow such a defence to prevail in an action by the corporation.

It is now very well settled that a corporation cannot avail itself of the defence of *ultra vires* when the contract has been, in good faith, fully performed by the other party, and the corporation has had the full benefit of the performance and of the contract. If an action cannot be brought directly upon the agreement, either equity will grant relief or an action in some other form will prevail. The same rule holds *e converso*. If the other party has had the benefit of a contract fully performed by the corporation, he will not be heard to object that the contract and performance were not within the legitimate powers of the corporation. (*Ex parte Chippendale*, 4 D. G., M. & G., 19; *In re National P. B. Build. Soc.*, L. R., 5 Chy. Appeals, 309; *In re Cork, etc., R. C.*, 4 id., 748; *Fishmongers' Co.* v. *Robertson*, 5 McG., 131.)

The only justification for such a plea by an individual sued upon a contract with a corporation is, that the obligation is not mutual, as the other party, the corporation, would not be bound by it. The objection to such a defence in an action upon an executed contract is given by TINDAL, Ch. J., in the case last cited, in these words: "Upon the general ground of reason and justice, no such answer can be set up. The defendants having had the benefit of the performance by the corporation of the several stipulations into which they entered, have received the consideration for their own promises; such promise by them is, therefore, not *nudum pactum;* they never can want to sue the corporation upon the contract in order to enforce the performance of their stipulations which have been already voluntarily performed, and therefore no sound reason can be suggested why they should justify their refusal to perform the stipulations made by them on the ground of inability of the corporation, which suit they can never want to sustain."

The same principle was adjudged in *R. and B. R. Co.* v. *Proctor* (29 Vt. 93), Ch. J. REDFIELD saying: " The only wrong in the directors is in having exceeded their powers; the transaction with the defendants, so far as it goes, will tend to restore a portion of the money to its rightful proprietor, and of this the defendants ought not to complain as they are confessedly solicitous to bring the directors of the plaintiff's company back to their legitimate functions." (See, also, *Farmers and Millers' Bank* v. *D. and M. R. Co.*, 17 Wis., 372.)

The same equitable principle was intimated by Ch. J. KENT, in *Silver Lake Bank* v. *North* (4 J. Ch., 370). *Parish* v. *Wheeler* (22 N. Y., 494), proceeds and was adjudged upon this general rule, Ch. J. COMSTOCK, enunciating the doctrine that " the executed dealings of corporations must be allowed to stand for and against both parties, where the plainest rules of good faith require."

*Palmer* v. *Lawrence* (3 Sandf. Sup. Ct. R., 161), lays down the proposition in more comprehensive terms. Judge DUER, speaking for the court, says: " The general rule which is fairly deducible from all the cases on this subject is, that a defendant who has contracted with a corporation *de facto* is never permitted to allege any defect in its organization as affecting its capacity to contract or sue." The proposition may not be true in respect to contracts executory and wholly unexecuted; we do not pass upon that. It was decided in the *Steam Navigation Co.* v. *Weed* (17 Barb., 378), that when it was a simple question of capacity to contract arising either on a question of regularity of organization or of powers conferred by the charter, a party who has had the benefit of the contract cannot be permitted, in an action founded upon it, to question its validity. Judge PARKER's opinion, to which nothing need be added, is well fortified by the many cases to which he refers and which, aside from the argument of the learned judge, abundantly sustain the judgment. Among the cases referred to and commented upon by Judge PARKER, are *Silver Lake Bank* v. *North* (*supra*); *State of*

*Indiana* v. *Woram* (6 Hill, 37); *Chester Glass Co.* v. *Dewey* (16 Mass., 94); *Steamboat Co.* v. *McCutcheon* (13 Penn. St. R., 13).

It is very evident, as well upon principle as upon authority, that had this action been against the debtor corporation the objection that the contract was not authorized by the charter of the plaintiff would have been untenable and the plaintiff would have been entitled to recover.

Does the defendant and appellant stand in a different position, or can he avail himself of a defence to the original cause of action of which the corporation could not? There may be defences personal to the defendant, but objections which go to the foundation of the claim and demand against and the obligation of the corporation are not personal to one sued as trustee upon the statutory liability. The debt must be proved by evidence competent against the defendants. The facts upon which the debt is founded must be proved. The naked admissions of the corporation or judgment against the corporation are not evidence against the trustees. They are *res inter alios acta;* but when facts are proved which would establish the existence of a debt against the corporation, the liability of the trustees for the debt follows upon the proof of the other facts upon which the liability is made by statute to depend. A debt necessarily results from the acts of the corporation; and whether such acts are such as, in themselves, create or constitute an obligation, or such as will at law estop the corporation from denying its liability, is not important. The trustees are, by the statute, made *privies* to the acts and doings of the corporation in the transaction of its business resulting in a pecuniary debt or liability. When it is proved that the corporation has received property from others under a promise to pay, under circumstances which the law would adjudge sufficient to charge the corporation for the purchase-price, a debt is established which the trustees cannot dispute, although perchance the corporation might, for any reason, have refused to accept the property; and had it done so no legal liability would have resulted.

In *Jones* v. *Barlow* (decided in June last not yet reported),* we held that the liability of a trustee, upon the failure of the corporation to make the annual report called for by the statute, was co-extensive and concurrent with that of the corporation, *quoad* the debt which was sought to be fixed upon him. That there must be not only an existing debt against the corporation but a debt presently due, and for the recovery of which an action would lie against the corporation; and that if the corporation was not suable by reason of a novation or renewal of the debt, an action would not lie against the trustee. We gave the defendant the benefit of that rule. Applying the same principles here, and for the reasons assigned in the prevailing opinion there given, we are constrained to hold, that if a valid debt exists against the corporation, to which there is no good defence at law or equity in behalf of the corporation, it must be adjudged and held a valid debt where the trustee is sought to be charged with its payment. This necessarily follows as the converse of the decision in *Jones* v. *Barlow.* The first step is taken in establishing the liability of the trustees where the facts proved would entitle the plaintiff to a judgment against the corporation for the debt in suit. That establishes the existence of a debt against the corporation; and upon proof of the other facts, viz., the trusteeship and default in making the report, the liability of the trustee is proven and judgment must go against him. Other questions may arise in respect to the report of 1873, and we do not pass upon that.

The judgment must be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.

* 62 N. Y., 202.