# City Court.

## Special Term—July, 1884.

## HOLMES, BOOTH & HAYDENS *against* OTTO STIETZ.

A person contracting with a corporation is estopped from questioning its corporate existence.

Decision on motion for judgment.

McAdam, Ch. J.—The complaint alleges that the plaintiff is a foreign corporation, created under the laws of the State of Connecticut, and that, by indenture of lease in writing made between it and the defendant, the defendant hired from it certain premises for a specified term, and at a stated rent. It then alleges that the defendant failed to pay the quarter's rent which became due May 1, 1884, and for this rent, amounting to $500, the plaintiff demands judgment.

The defendant by not denying has admitted the execution of the indenture sued upon (Code, § 522).

The defendant in his answer attempts to question the corporate charter of the plaintiff, but this he cannot do. He contracted with it and is estopped from disputing its

corporate existence (Weed Sewing Machine Co. *v.* Kaulback, 3 *Thomp. & C.* 304; Erie Savings Bank *v.* Baldwin, 22 *Alb. L. J.* 134; Buffalo City R. Co. *v.* New York Central R. R. Co.; *Id.* 134; Commercial Bank *v.* Pfeiffer, 22 *Hun,* 327; Palmer *v.* Lawrence, 3 *Sandf.* 161; Steam Navigation Co. *v.* Weed, 17 *Barb.* 378; White *v.* Coventry, 29 *Id.* 305; Sands *v.* Hill, 42 *Id.* 651; White *v.* Ross, 15 *Abb. Pr.* 66; Hyatt *v.* Esmond, 37 *Barb.* 601; Same *v.* Whipple, *Id.* 595). It appears by the charter granted by the Legislature of Connecticut and offered in support of the motion, that the plaintiff was regularly incorporated. Under these circumstances the justice at the trial term would be obliged to direct a verdict for the plaintiff. The jury would have nothing to pass upon. In such a case it is difficult to imagine any defense which the defendant may have against a motion like the present. It follows that the motion for judgment must be granted, with costs.

**Formal defects in Organization of Corporation not available to a person dealing with and afterwards sued by it.**

Formal defects in the proceedings to organize a corporation, if any such exist, are not available to a person dealing with and afterwards sued by it (Persse & Brooks P. W. *v.* Willett, 1 *Robt.* 131; 37 *Legal Intell.* [Pa.] 434), and proof of the publication of the certificate of the comptroller of the currency is unnecessary (Merchants' Exchange National Bank of Memphis *v.* Cardozo, 3 *Jones & Spencer,* 168).

In the case of Mokelumne Mining Co. *v.* Woodbury (14 *Cal.* 424) it appeared that the statute required the certificate of incorporation to be filed with the county clerk, and a duplicate with the secretary of state, and that, *when so filed, the organizers should be a corporation.* The court *Held,* that as to third persons the filing in the clerk's office was all that was required, and that *the failure to file the duplicate was* an omission, the remedy for which resided in the State alone, in a direct proceeding (see also Roundel *v.* Fay, 32 *Cal.* 354; Hamilton *v.* President, &c., 24 *Ill.* 22). In Tarbell *v.* Page (24 *Ill.* 46) it was *held* that although a corporation fails to file the necessary certificate at the office of the secretary of state in pursuance of the statute, *yet it is to be deemed a corporation with respect to third persons in all pro-*

Holmes, Booth & Haydens v. Stietz.

*ceedings, except a quo warranto or some direct proceeding by the State to try the validity of the organization.*

In New York, the policy of the law, as indicated in the statute, and old Code, has been to limit and restrict the right of the defendant to question the corporate existence of a plaintiff to cases in which the defendant in his answer gives notice of such an intent by pleading *affirmatively* in the answer that the plaintiff is not a corporation (3 *R. S.* 5 ed. 755, § 3 ; Mutual Ins. Co. *v.* Osgood, 1 *Duer*, 708 ; Holyoke Bk. *v.* Haskings, 4 *Sandf.* 675 ; Metropolitan Bk. *v.* Lord, 1 *Abb. Pr.* 185 ; 30 *Barb.* 491 ; 5 *Bosw.* 716 ; 13 *How. Pr.* 270 ; and kindred cases) ; and the courts, even under the old Code, held that a mere general denial will not call for this proof, and that the defendant must expressly plead that the defendant is not a corporation (Bank of Genesee *v.* Patchin Bk. 13 *N. Y.* 314 ; 7 *Bosw.* 493) before it can be required.

In the case of the Methodist Union Church *v*, Pickett (19 *N. Y.* 482), the court of appeals, while recognizing the general rule that a corporation, whenever it brings a suit, is bound to prove that it was legally incorporated, in all cases in which the issue is or may be properly raised, says, " The rule established by law as well as by reason is, that parties recognizing the existence of corporations by dealing with them, have no right to object to any irregularity in their organization or any subsequent abuse of their powers, not connected with such dealing. As long as these are overlooked or tolerated by the State, it is not for individuals to call them in question." In the case of Trustees of Vernon Society *v* Hills (6 *Cow.* 23), which was an action brought by the trustees of a religious corporation, SAVAGE, Ch. J., used the following language : " The plaintiffs have acted as trustees upon the matter in question, and in bringing their suit, *colore officii :* and before an objection to their right can be sustained by the defendant, on the ground that they were not regularly elected, he must show that proceedings have been instituted against them by the government, and carried on to a judgment of ouster." In the case of the Leonardsville Bank *v.* Willard (25 *N. Y.* 574), the court of appeals *held,* " that as against one who has dealt with a banking association, organized as such under the general law, its incorporation is sufficiently proved by the recording of its articles in the county clerk's office, and its user of corporate powers under *color* of incorporation, without proof that the articles were filed in the banking department." There must be a *user* under the franchise to estop persons from questioning [corporate existence (69 *N. Y.* 518).

Holmes, Booth & Haydens v. Stietz.

## Documents omitted at the Trial may be read at General Term to sustain a judgment.

Authenticated papers may be read at the general term to sustain a judgment (Jarvis v. Sewell, 40 *Barb.* 435 ; 1 *Sweeney*, 484 ; 45 *N. Y.* 166 ; 2 *Sandf.* 718). This was allowed in the case of the Bank of Charleston v. Emeric (2 *Sandf.* 718, *supra*), in which it was claimed that the plaintiff's incorporation was imperfectly proven on the trial, and Chief Justice Oakley, on behalf of the court, allowed the plaint. iffs to read, in support of the judgment, an exemplification in due form of their act of incorporation by the Legislature of the State of South Carolina, and after referring to the rule authorizing such proof after judgment, the learned justice said : "It is surely not worth while to send this cause bank for another trial, merely to have this document, on which no question arises, given in evidence."

Such objections are technical, and the cases show a disposition to do even and substantial justice between suitors upon the merits of their controversies without encouraging technical objections which are not insurmountable in their character (see cases on this subject collated in *Baylies on New Trials*, 161, 162).

## Goods Sold and Delivered—Principal and Agent—Corporation— Ultra Vires.

*Supreme Court of Massachusetts*, SLATER WOOLEN CO. v. RUFUS LAMB ; *Worcester*, January, 1887.

Action of contract, upon an account annexed, for goods sold and delivered to the defendant.

At the trial in the superior court, before BACON, J., the plaintiff introduced evidence tending to show that the defendant had purchased and received the goods as charged in the plaintiff's declaration; but the defendant denied having bought the goods of the plaintiff or at plaintiff's store. The plaintiff also introduced evidence of its incorporation, "for the purpose of manufacturing fabrics of wool and worsted or of a mixture thereof with other textile materials." It was agreed that the business was carried on in the name of Samuel Slater & Sons, until July 1, 1876, and in the name of H. N. Slater between July 1, 1876, and March 1, 1877, and after March 1, 1877, it was carried on under the name of the Slater Woolen Co. The defendant set up that the plaintiff had no power under its corporate act to carry on the business of selling groceries, dry goods, and kindred articles ; and also that, if the defendant ever had the goods named in the plaintiff's declaration, he did not purchase them

Holmes, Booth & Haydens *v.* Stietz.

from the plaintiff, but from Samuel Slater & Sons and H. N. Slater. The defendant produced pass-books showing the account to have been in the name of Samuel Slater & Sons, and H. N. Slater, and not in the name of the Slater Woolen Co. It also appeared that the defendant was not in the employ of the plaintiff, or of Samuel Slater & Sons, or H. N. Slater, during any part of the time covered by the declaration, and did not receive these goods in payment for services rendered the plaintiff corporation. There was evidence tending to show that the defendant had no knowledge or notice that the plaintiff was the owner of said store from which the articles sued for were purchased. The plaintiff contended that the Slater Woolen Co. was the sole owner and furnished all the money to carry on the business ; and that it did carry on the business in the name of S. Slater & Sons, and H. N. Slater as its agents, but did not contend that it ever gave notice to the world that they were its agents in any way. It also appeared that the Slater Woolen Co. furnished the money the business was carried on with, and charged Samuel Slater & Sons and H. N. Slater interest on the money they used, and gave them credit for interest on the money deposited with it by Samuel Slater & Sons and H. N. Slater; and the books of H. N. Slater, as introduced by the plaintiff, showed that H. N. Slater was indebted to the Slater Woolen Co. on March 1, 1877, in the sum of $11,497.95. These books showed that said amount was transferred as a balance to the plaintiff by charging said balance to the plaintiff's account, and crediting the same to the account of H. N. Slater. There was evidence tending to show that the business was done by S. Slater & Sons and by H. N. Slater as the agents of the plaintiff.

The defendant asked the judge to instruct the jury as follows: "1. Corporations are limited in their powers by their act of incorporation. 2. Corporations have no power to appoint agents for the transaction of business not authorized by their act of incorporation. 3. In order to entitle the plaintiff to recover, they must show that they are legally incorporated for the purpose of carrying on the business for which this action is brought. 4. If the jury find that, during the time covered by the plaintiff's bill of items, the business was carried on by S. Slater & Sons and H. N. Slater, then the plaintiff cannot recover, and it would make no difference whether the plaintiff furnished the capital or not."

The judge declined to give the first three rulings requested; stated that he would give the fourth "in a modified form;" and instructed the jury, in substance, as follows: "You are to determine whether this business was really the business of the Slater Woolen Co. during

the time and while it was done in the name of H. N. Slater and S. Slater & Sons, because it is evident that this action could not be maintained for anything except that which was done in the name of the Slater Woolen Co., and unless it was the business of the Slater Woolen Co. when it was done by H. N. Slater and by S. Slater & Sons. It would not make any difference if this business was the business of the Slater Woolen Co., the latter would have a right to bring its actions in its own name, although it had done business by the name of its agent H. N. Slater, and S. Slater & Sons. And whether it was or not the business of the Slater Woolen Co. depends not upon the fact whether the Slater Woolen Co. furnished the capital to H. N. Slater and S. Slater & Sons, and charged them interest on it, and did the business not as the Woolen Co., but for and in behalf of H. N. Slater and S. Slater & Sons, then of course this action could not be maintained for anything that was sold by H. N. Slater and S. Slater & Sons; but, if H. N. Slater and S. Slater & Sons were mere agents with an undisclosed principal of the Slater Woolen Co., doing business for the Slater Woolen Co., then this action, although it was not known to the defendant, might be maintained by the Slater Woolen Co. You will see then the importance of distinguishing carefully between the business of the Slater Woolen Co, done by its agent as an undisclosed principal of the transaction, and the business of H. N. Slater and S. Slater & Sons done by themselves. The burden is upon the plaintiff to establish the fact, by a fair preponderance of the evidence, that the business was done for and in behalf of the Slater Woolen Co. alone, not simply that they loaned the capital to H. N. Slater and S. Slater & Sons. If you find that the Slater Woolen Co. was a corporation duly established, and there is evidence of that, and it is sufficient for you to find the fact that that was a corporation duly established and trusting by its corporate capacity, the plaintiff can recover, if you find this first issue which I have been stating to you in favor of the plaintiff."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. A. Gile*, for the defendant.

*W. S. B. Hopkins*, for the plaintiff.

FIELD, J.—The substance of the defendant's contention is that the plaintiff, having been incorporated "for the purpose of manufacturing fabrics of wool and worsted or of a mixture thereof with other textile materials," could not, by and in the name of persons who were, in fact, keeping a store as its agents, but whose agency was undisclosed, sell groceries, dry goods and other similar articles to

Ogle *v.* King.

the defendant, who was not employed by the company, and then maintain an action against him to recover either the price or the value of the goods sold. If the goods were the property of the plaintiff, and were sold by its agents, the plaintiff can sue as an un-disclosed principal. Chester Glass Co. *v.* Dewey, 16 *Mass.* 94. There is a distinction between a corporation making a contract in excess of its powers and making a contract which it is prohibited by statute from making, or which is against public policy or sound morals, and there is also a distinction between suing for the breach of a contract wholly executory and suing to recover the value of property which has been received and retained by the defendant under a contract executed on the part of the plaintiff. If it be as-sumed, in favor of the defendant, that the contracts of sales in the case at bar were *ultra vires* of the corporation, they were not con-tracts which were prohibited, or contracts which were void as against public policy on good morals, the defect in them is that the corporation exceeded its powers in making them. The defendant, under these contracts, has received the goods, and retained and used them. We think that the corporation can maintain an action of con-tract against the defendant to recover the value of the goods (Whitney Arms Co. *v.* Barlow, 63 *N. Y.* 62 ; Woodruff *v.* Eastern R. R., 93 *Id.* 107 ; Nassau Bank *v.* Jones, 95 *Id.* 115 ; Pine Grove Township *v.* Talcott, 19 *Wall.* 666, 679).

Exceptions overruled.