# CASES

## ARGUED AND DETERMINED

### IN THE

# United States Circuit and District Courts.

---

AUTOMATIC PHONOGRAPH EXHIBITION CO. *v.* NORTH AMERICAN PHONOGRAPH CO.

*(Circuit Court, S. D. New York. January 21, 1891.)*

1. CORPORATION—CONTRACTS—PRELIMINARY INJUNCTION.

Defendant, owning letters patent for phonographs, organized various local subcompanies, authorizing them to rent out machines to the public. Complainant, who owned letters patent for a coin-slot machine, to be used in connection with phonographs, made an agreement with defendant wherein the latter agreed to use its best endeavors to induce the various subcompanies to grant complainant the exclusive right to use the coin-slot machine within their respective territories. In pursuance of such agreement, defendant acquired from the various local subcompanies such exclusive right for the period of five years. Defendant then directed the various local subcompanies to sell machines directly to the public, instead of leasing them as theretofore, which complainant alleges will irreparably injure its business. *Held*, on motion by complainant for a preliminary injunction to restrain such contemplated sales, that it would not be presumed that the agreement between complainant and defendant, which was formally executed under seal, by mistake omitted a clause authorizing defendant to direct such sales by the local subcompanies to the general public, and that a preliminary injunction would issue.

2. SAME—ESTOPPEL.

Defendant, which received 15,000 shares of complainant's stock as a consideration for the agreement, cannot defeat the motion for preliminary injunction on the ground that complainant had never been legally organized as a corporation, and that the contract was *ultra vires*.

On Motion for Preliminary Injunction.

Bill by the Automatic Phonograph Exhibition Company to enjoin the North American Phonograph Company from compelling its various subcompanies to sell phonographs to the public. The North American Phonograph Company owns various patents for phonographs. It has conducted its business by the formation of various local companies throughout the United States, and has granted an exclusive license to each of them to use the phonograph within its territory, with a right in the local companies to sublicense the use of the machines to the general public. The North American Company in such agreement of license also reserved the right of compelling the local companies to sell the machines outright to

the public after January 1, 1890. The complainant, the Automatic Phonograph Exhibition Company, owns patents for a coin-slot machine, designed to be used in connection with phonographs, and on April 19, 1890, it entered into an agreement with defendants and others, known as the "Six-Party Agreement," under which defendant agreed to use its best endeavors to induce the local companies to enter into contracts with defendant, giving the latter exclusive right to use the phonograph in connection with the coin-slot machine. This six-party agreement contained no reservation of the right to sell phonographs directly to the public in favor of defendant. Pursuant to this six-party agreement, complainant entered into contracts with the various local phonograph companies, by which it obtained the exclusive right to use phonographs in connection with a coin-slot machine for a period of five years. Complainant then invested large sums of money in a manufacturing plant, and put on the market a large number of phonographs with coin-slot attachments, which are each earning on an average about two dollars per day. In December, 1890, defendant directed the various local companies in the United States to sell machines directly to the public, instead of licensing their use as heretofore. Against such contemplated sale defendant immediately protested, as being in violation of the six-party agreement, and of its contracts with the various local companies, and stating that such contemplated sales would utterly and entirely destroy its business. Defendant now moves for a preliminary injunction restraining such contemplated sales.

*John H. Kitchen*, for complainant.

*J. Adriance Bush*, for defendant.

LACOMBE, Circuit Judge. This motion must be determined upon the papers as they stand. It is not disputed that the six-party agreement to which both defendant and complainant were parties was in the form set forth in the bill. Its fourth clause, therefore, contained an agreement on the part of the defendant to use its best endeavors, so far as it could legally do so, to induce its licensees to enter into agreements with the complainant similar to the one annexed to such six-party agreement, and which did not contain the reservations which had been inserted in contracts made with such licensees before the friendly offices of the defendant had been thus secured. It is insisted that the six-party agreement was signed in such form by a mistake, and defendant prays, or is about to pray, that it be reformed in that respect. It is, however, manifestly an important document, formally executed under seal, presumably with all the deliberation which attends the execution of such instruments, and upon this motion for a preliminary injunction it must be held as correctly expressing the intention of the parties, certainly unless a perfectly clear case of fraud or mutual mistake of fact were made out.

The objections that the complainant is not lawfully organized as a corporation, and that for various reasons such contracts are *ultra vires*, should not avail to defeat this motion under the principles laid down in *Arms Co.* v. *Barlow*, 63 N. Y. 62, and *Railway Co.* v. *McCarthy*, 96 U.

S. 258, as the defendant has received under the contract, and still holds, 15,000 shares of the complainant's stock.

The injunction may continue until further action of the court in the terms of the *ad interim* order, but with an express reservation of the graphophones.