Wilson, J.
The defendants, appellants herein, were directors of The Platte River Paper Mills Company, a corporation organized under the laws of Colorado in 1892. The plaintiff firm claims that the corporation became indebted to it on account for a consignment of linen rags sold and delivered to it by plaintiff between the 1st day of April, and the 1st day of June, 1894, at an agreed price, which should have been paid on or before July 1, 1894. It seeks by this suit to enforce the personal liability of the defendant directors for this debt, incurred, it is alleged, by reason of the failure of the corporation to make or cause to be made within sixty days from *152 the 1st day of January, 1894, its annual report as required by statute, which reads as follows:
“ Every such corporation shall annually, within sixty days from the first day of January, make a report, which shall state the amount of its capital and the proportion actually paid in, and the amount of existing debts; which report shall be signed by the president, and shall be verified by the oath of the president or secretary of said company, under its corporate seal, and filed in the office of the recorder of deeds of the county where the business of the company shall be carried on. And if any such corporation shall fail so to do, unless the capital stock of such corporation has been fully paid in and a certificate made and filed as provided in section twelve (12) of this act, all the directors or trustees of the company shall be jointly and severally liable for all the debts of the company that shall be contracted during the year next preceding the time when such report should by this section have been made and filed, and until such report shall be made.” Gen. Stat. sec. 252; Mills’ Ann. Stats, sec. 491. On June 6, 1894, the president of the corporation and a majority of the directors prepared as • provided by law a certificate of the paid-up capital stock of the corporation, and filed it in the office of the recorder of deeds of Arapahoe county, wherein the business of the company was carried on. This same certificate was filed in the office of the secretary of state on June 18, 1894, and not before. The shipment of rags, although contracted for prior to June 1, 1894, was not delivered to, nor received by the corporation until June 7, 1894. Such other facts as are necessary to be stated will appear during the course of this opinion.
Counsel conceded in their,oral argument, and an examination of the record justifies the statement, that a consideration and discussion of only two or three of the one hundred and ninety-three assignments of error would be necessary, — that the determination of the questions involved in these would settle all as well as the appeal.
1. The fact, if it be conceded, that the corporation had no *153 debts prior to the time when the annual report for 1894 was due under the provisions of the statute, is immaterial, and cannot avail the directors as a defense. The report was not only required to state the amount of debts existing at that time, but also the amount of its capital, and the proportion actually paid in, the object being not only to compel the furnishing of information of possible value to those who were at that time creditors of the corporation, but also to those who might thereafter become such, the latter purpose being the chief one and obviously of special importance. The law gives to private corporations special franchises and privileges, but as said by the New York court of appeals in construing a similar statute, the corporation itself having “ no sense of legal obligation, or of common honesty or fairness, the statute makes an attempt to compel its directors, under penalty of personal liability, to communicate to the public such information about its assets and liabilities as may be useful to its creditors.” Bradford v. Gulley, 10 Colo. App. 146; Morgan v. Hedstrom, 58 N. E. Rep. 26. In case of default in making this report when required, the statute imposes upon the directors a liability for all debts of the company which were contracted during the year next preceding the time when such report should have been made and filed, and also all which may be thereafter contracted until such report shall be made. The default may be terminated and ended, and the directors relieved from all liability for debts subsequently contracted, by the making of the report, or by the making and filing of the certificate of paid-up capital stock, as provided in Gen. Stats, section 248. To make this effective, however, such certificate must be filed, after being properly prepared, both in the office of the recorder of deeds of the county wherein the business of the company is carried on, and in the office of the secretary of state. The filing in only one is obviously insufficient. An intending creditor, taking notice of the law and observing all precautions for his protection, might make an examination in either one of the specified offices, and not finding the certificate, it would absolutely defeat the express intention and *154 requirement of the statute to hold that the creditor is not entitled to the relief which the law gives him, because he might have found the certificate filed in the other. The requirement of the statute is imperative; its language is unmistakable, and there is no room for construction. By section 252, Gen. Stats., the directors could be relieved of personal liability on the ground of having made and filed the certificate of paid-up capital stock only when such certificate was made and filed as provided in section 248, Gen. Stats., and this was that such certificate should be filed in both offices. It follows, therefore, that in the present suit, the defendant directors cannot claim to have been relieved from any personal liability by reason of filing the certificate of paid-up capital stock until after June 18, 1894.
2. The chief contention upon which defendants rely is' that the complaint did not state facts sufficient to constitute a cause of action. Both this court and the supreme court have several times passed upon what was necessary to be alleged in the complaint in a suit of this character. Anfenger v. Anzeiger Pub. Co., 9 Colo. 378 ; Bradford v. Gulley, supra. The complaint in this case seems to be sufficient, under the rules there laid down.
The principal point raised by defendants, however, in support of this contention, and that upon which they most rely to secure a reversal of the judgment, is that the defendant directors incurred no personal liability except for debts which had not only been contracted, but which were also due during the time of the default; and that it was necessary for plaintiff, in order to state a cause of action, to have alleged this fact. This plaintiff did not do; on the contrary, it appears from the complaint itself that the debt was not due until July 1, 1894, about eighteen days after the directors had terminated their personal liability for obligations of the corporation thereafter contracted or incurred by filing the certificate of paid-up capital stock. On June 13th, when the filing of this certificate was complete, there was no existing *155 cause of action in favor of the plaintiff and against the corporation, which could then have been enforced.
The question here presented is a new one in this jurisdiction, it having never been directly passed upon either by the supreme court, or by this court. We think that the contention of defendants in this respect cannot be sustained either by reason or authority. It will be observed that the statute makes the directors liable for the debts of the company that were contracted during the year previous to the time when the report should be made, and for all debts thereafter contracted, until the default is terminated by the making of the report, or by filing the certificate of paid-up capital stock. It says nothing about debts then matured, or not' matured; those upon which a cause of action then existed,' or did not exist. It was sufficient if the debt had been contracted. We think the true rule is very aptly expressed by a New York court, in construing that portion of a similar statute wherein identically the same language is used as in the Colorado statute, and is now under consideration. “The' true doctrine is that a debt is contracted when in consideration of value received by a corporation, a payment is to be made, no matter whether at once or at a future period.” Vernon v. Palmer, 16 J. & S. (N. Y.) 231. This rule is supported by, and in accord with all of the New York cases, as we read them. Some confusion has arisen by reason of possibly a careless reading of some of these cases, wherein it was held that the, mere execution of a contract between a seller and a corporation for the sale and delivery of goods, does not of itself amount to the contraction of a debt within the meaning of the statute, delivery being first essential. All agree, however, that, when delivery is made, the debt springs into existence. Some confusion has also arisen in reading some of these New York cases, wherein it was held that an action would not lie against the directors at once for a debt contracted before their default, and not until the expiration of the term of credit. In other words, the creditor could not sue the directors until such time as he would have a right .to *156 sue the company. That point, however, is not involved in this case. Such was the point decided in Jones v. Barlow, 62 N. Y. 202, which defendants cite us, and upon which they chiefly rely in support of their contention. In that decision, the court said, “ In such case there would be a liability, but it would be dormant, and not constitute a cause of' action until the debt should become due.” This refers only to the maturity of the debt, and to the time when the cause of action arises upon which suit could be brought. In Vernon v. Palmer, cited above, the decision in Jones v. Barlow was referred to, and the court said that the remarks in that opinion, upon which the defendants in this case rely, were made with reference to the fact that three out of the ten notes upon which a recovery was had against the defendants as trustees -or directors, were not due at the time of the commencement of the action, and for that reason the action would have failed if it had been brought upon the three notes against the corporation, that consequently no right of action existed upon said three notes against the trustees or directors. This was the precise point in the case to which the language in question was addressed, the trial court having refused to charge that the plaintiff could not recover for the amount of the three notes not due at the time of the commencement of the action, and having directed a verdict for the full amount of the indebtedness evidenced by all of the notes. The question as to whether the directors were relieved from liability by having ceased to be directors before the debt became due, or by their personal liability having terminated by the making of a report, or the filing of a certificate of paid-up capital stock, did not arise in that case. Subsequent decisions of the highest courts in New York are to the same effect.
Arms Co. v. Barlow, 63 N. Y. 72, cited by the defendants to support their contention, does not do so. On the contrary, so far as it is applicable at all, it sustains the doctrine announced in Vernon v. Palmer. The point upon which that case turned was whether the debt accrued against the corporation, while the contract out of which it grew had not been *157 executed. The court held that until the performance of the contract, it was but an executory and contingent obligation, which after performance by the other party might grow into a debt. It was not then an existing indebtedness. The only reasonable conclusion from the language of the court is that the obligation would become a debt upon the performance of the contract by the other party, such a result not being dependent, however, upon the maturity of the debt.
In Gold v. Clyne, 134 N. Y. 265, also cited by the defendants, the court said, “ The indebtedness of the corporation was dependent upon the performance of the contract by the plaintiffs, and did not until then arise. Then, and not until that time, did it become a debt of the company.” Here is an express declaration that upon performance of the contract, the obligation became a debt of the corporation. In a very recent case, decided only last October, the New York court of appeals said, “ The liability is for debts then existing, that is, whether due or not,” thus expressly recognizing the fact, as do the other cases cited, that the liability of the directors is not dependent upon the maturity of the debt. Morgan v. Hedstrom, supra. That court further said in its opinion that the statute requiring the corporation to make and publish an annual report, and imposing personal liability upon the directors in default thereof, should be liberally and not narrowly construed, so as to embrace the debts within the language of the act.
We are clearly of the opinion, therefore, that the complaint sufficiently stated a cause of action. The liability of the defendant directors is not dependent upon the time of the maturity of the debt. If the debt was contracted’while they were in default, it cannot avail them as a defense that they terminated such default and all further personal liability for subsequent debts by filing the certificate of paid-up capital stock before the debt, upon which this action is based, had matured. The personal liability once incurred by directors can be relieved from by no act of themselves save a satisfaction of the debt.
*158 3. A third inquiry, of controlling importance, which remains to he considered and determined is, was it established on the trial by sufficient competent evidence that the debt for which a recovery was had was a valid, bona fide obligation, and liability of the corporation, payment of which could be enforced against it, and that it was contracted during the time in which the corporation was in default for failure to make its annual report, that is to say, between the sixtieth day after the first day of January, 1894, and June 13, 1894? If such were the case, then the defendants were liable, and the plaintiffs were entitled to the judgment which was rendered in their favor. The burden of proof in this respect was upon the plaintiffs. The debt could be proved by any of the methods, too numerous and well known to the profession to require mention here, by which a debt could be shown against either a corporation or an individual. If the debt was alleged to have been contracted by an agent, it does not necessarily follow that the express authority of the agent therefor should be shown. The circumstances attending the transaction might have been such that the authority would be implied, or that it would be conclusively presumed, these circumstances being such as to estop the corporation from alleging want of authority. Such, for instance, would be the delivery of the goods by the vendor, and the acceptance by the corporation. In this case the latter could not be heard to say that the agent was without authority to make the contract of purchase, and the law itself would imply a promise on the part of the corporation to pay. If the circumstances were such as to estop the corporation from claiming that there was no specific contract of purchase, or that .the pretended agent who assumed to make it, was without authority, the directors would be equally estopped from availing themselves of such a defense. In such case it would be immaterial whether the director? had or had not knowledge that the debt was actually contracted, .or a previous contract of purchase made or authorized. Directors are “ by the statute made privies to the acts and doings of the corporation in the *159 transaction of its business resulting in a pecuniary debt or liability.” Arms Co. v. Barlow et al., supra. It must be borne in mind too that this is not a suit based upon a false report, but upon a failure to make a report at all. The alleged liability of the directors is based upon a fact, — whether the report was made within the time required. If not, the law says in plain and unmistakable language that the directors shall become personally liable by reason only of that fact. The facts upon which the defendants rely to disprove personal liability are that sometime in 1892, the Corporation entered into a written contract with James H. Platt, who was its president at the time of its organization, but who resigned his office for this purpose, that he should construct and furnish all of the buildings, works and machinery of an .entire plant suitable for the purpose of manufacturing paper; and also furnish a working capital in the sum of $25,000; and that in consideration thereof, upon the completion of the factory in compliance with the contract, the corporation would issue and deliver to him all of its capital stock. It is further claimed and shown that this contract was formally completed about June 6, 1894, and that on 'that date, at a ■regular meeting of the directors, James H. Platt made a report of such completion, which was accepted and approved by the board, and thereupon on the same day, said Platt was reelected president. They further claim that the contract for the purchase of the goods for the purchase price of which plaintiffs bring this suit was made by said Platt with the plaintiffs without any authority from the corporation, and while he was not an agent therefor, nor connected with it in any official capacity. It appeared in evidence, however, that •a large number of letters passed between the parties in reference to the transaction; those to the plaintiffs including the original order for the rags were written on paper bearing the letterhead of The Platte River Paper Mills Company, and signed “James H. Platt,” without, however, any designation of any official or representative character. A number of the letters were signed by George P. Platt, who was at all of the *160 times in controversy a director of the corporation. There were also offered in evidence a number of letters and telegrams from plaintiffs in connection with the transaction, all of which were addressed to the corporation by its corporate name. In addition to this, it was shown that the receipts given to the railroad company upon the actual delivery of the goods to the corporation at its factory, were signed“The Platte River Paper Mills Company, consignee, by F. C. Keeney,” who was then also a director of the corporation. The railroad freight bills were paid for on behalf of the corporation by Mr. Cooke, acting as its secretary. The bills of lading for the shipment were indorsed O. K. Lewis, Mr. Lewis being at the time acting president of the corporation. In addition to this, the goods were actually received and accepted by the company at its factory on June 7, 1894, the day following that on which the directors at their meeting had received the report of James H. Platt as to the completion of his contract for the erection of the works, and had formally accepted the plant. We think this testimony was amply sufficient to estop the corporation, — and of course the defendant directors, also, — from denying that on the 7th day of June, at least, the corporation contracted with the plaintiffs a valid debt, and that it was subsisting upon that day, immediately upon the delivery and acceptance of these goods, regardless of what might have been the circumstances attending the contract of purchase in the first instance; and regardless, too, of the nature of the authority vested in James H-. Platt to negotiate a purchase on behalf of the corporation.
In addition to this, on June 6, 1894, when Mr. Platt made his final report, and when the board of directors accepted the factory, there was entered upon the record book of the company the following: “ The president of the company then stated that while the railroad war had compelled a cut in price on some goods, in order to protect the company’s customers, it had also been to the advantage of the company in bringing in supplies that the company must have from the east, and that by placing orders on the cut rates, some seven *161 or eight thousand dollars had been saved to the company by way of freight on eastern goods, such as soda, pulp, fine linens, etc., and that he would ask permission to borrow thirty thousand dollars in order to fully pay for all of the supplies so ordered.” Here was an express recognition of the fact that the board did have knowledge that Platt had purchased supplies for and on behalf of the corporation, to be used in the manufacture of paper, and they neither repudiated nor disavowed his action. The directors cannot now be heard to say when a part of these goods arrived on the next day and were accepted by the corporation, either that they were purchased without their knowledge, or that Platt had no authority to make the purchase. We think the evidence was amply sufficient to show every fact necessary to' prove the liability of the company, and of course of the directors, the supplies having been delivered and received during the default of the corporation with respect to its annual report.
The case was evidently carefully and closely tried by counsel on both sides, and a voluminous record discloses many exceptions to rulings of the court, both in admitting and excluding testimony. Various instructions to the jury were also excepted to, and their giving assigned as error. A special reference to these, however brief, would extend this opinion to an unwarranted length. We deem it wholly unnecessary to consider them at all, because what we have said disposes of the appeal. Our holding as to the construction of the statute and the important legal principles which control the-case embrace and settle all of these disputed' questions. Counsel will readily perceive that under the views which we entertain and have expressed as to the vital and dominant issues involved, the verdict and judgment could not in our opinion have rightfully been otherwise than they were. Under the law applicable to the controlling issues as we have declared it to be, the evidence necessary to the right to a recovery by plaintiffs was practically undisputed and was amply sufficient. Even though the trial court had sustained the position and contention of defendants with refer *162 ence to the admissibility and competency of evidence, the judgment should have been for plaintiffs.
The controlling questions were in fact those of law, and realizing that these were of first importance as well as of first impressions in this jurisdiction, we have given to the consideration of them unusual care and attention. We feel assured that our views are in perfect accord not only with the plain language of the statute, but also with the legislative intent, with reason, and with the recognized principles of. sound public policy. Corporations are invested by the state with valuable special rights and privileges, as also are the individuals who compose them, they having, so long as they comply with the requirements of the law, complete immunity from personal liability for the debts of the concern. The corporate bodies speak and act, however, only through their directors, and it is not unreasonable nor unfair that these in return for and in consideration of the special privileges which they hold from the public, should be held to a strict account where the law imposes upon them specific duties and obligations for the protection of their creditors, and in the interest of the public generally.
The judgment will be affirmed.

Affirmed.