Salathiel Ellis, Respondent, *against* The Howe Machine Company, Appellant.

(Decided March 1st, 1880.)

The power of the general term, upon appeal from a judgment in an action tried before a referee, to review his findings upon questions of fact, even where the credibility of witnesses is involved, is to be exercised only in a very strong case, where the conclusion appears irresistible that his finding as to the facts was erroneous.

In an action against a corporation, to recover the compensation due to the plaintiff under a contract entered into between them, which

has been performed in good faith by the plaintiff, and of which the corporation has derived the full benefit, the defense of ultra vires is not available.

A corporation may be bound by a contract made and intended for its benefit, although such contract is entered into, on behalf of the corporation, by its treasurer only, without the concurrence of the whole or a majority of the board of directors.

APPEAL from a judgment of this court, entered upon a report of a referee.

The action was brought to recover a balance alleged to be due under a contract by which the plaintiff was to make for the defendant a statue and bas-reliefs for a pedestal. The facts are stated in the opinion. Upon trial before a referee, he reported in favor of the plaintiff, and judgment for plaintiff was entered on his report. From the judgment the defendant appealed.

*S. P. Nash*, for appellant.

*Field & Deyo*, for respondent.

CHARLES P. DALY, Chief Justice.—The eminent referee before whom this case was tried, has, in the elaborate opinion delivered by him, dispensed with the necessity of our recapitulating the material parts of the testimony, or going into any examination of the law, as he has carefully set forth the facts upon which his conclusion was founded ; and there is no question, as to what the law applicable to the subject is, made either by the appellant or respondent.

The appeal is brought upon the ground that the finding of the referee was erroneous upon the facts, and that the law was consequently misapplied.

So far as the testimony of L. S. Stockwell, the treasurer of the company, was in conflict with that of the plaintiff, the referee, in whose presence these two witnesses were examined, was more competent than we could be to judge of their relative credibility ; and although we have, when a case is tried

before a referee, the power to review his finding upon questions of fact, even where the credibility of witnesses is involved, it is a power not ordinarily exercised, from the superior advantage possessed by the referee, as he has seen and heard the witnesses testify; and it is only in a very strong case, where the conclusion appears to us to be irresistible that his finding as to the facts was erroneous, that we would assume to substitute our judgment for his. In the present case, however, it is not necessary to rest solely upon this ground, for I think the conclusion arrived at by the referee is fully borne out by the evidence, and that the facts which he enumerates in his opinion show, as he puts it, that Mr. Stockwell's recollection, at the time of the trial, did not conform with the actual facts of the case. The testimony establishes that the plaintiff was employed by the company to make the statue from a model or statuette, which he had previously made, of Elias Howe, Jr., and which they approved, with the intention of having it put up in the Central Park, apparently, as a public tribute to Howe as the alleged inventor of the sewing machine, by voluntary offerings of not more than one dollar each, from ladies, as the result of an initiatory proceeding or movement to that effect, on the part of fourteen prominent citizens of the city of New York, who united in recommending that this should be done; that the defendants, in employing the plaintiff to make the statue and the bas-reliefs that were connected with it, expected to have it put up in the Central Park; and that subscriptions of one dollar each would be made by ladies, towards defraying the expense of it; but that there was a distinct understanding between the defendant and the plaintiff, that if the subscriptions should not be sufficient to pay the cost of the work, the amount of which had been agreed upon, that the defendants would make the amount good to the plaintiff. The conclusion which the testimony warrants is, that the whole undertaking, on the part of the defendants, was a business enterprise; that they anticipated a benefit and advantage, in the sale of the Howe sewing machine, by having the statue of the original proprietor and alleged inventor put up apparently as a public tribute, in the Central Park, through voluntary subscriptions

raised by the women of the country in very small amounts, and necessarily embracing a very large number; intending to avail themselves of such subscriptions, if any were obtained; but to have the statue made, and to have it put up in the Central Park at their own expense, whether any such contributions were received or not; applying them, if any should be received, towards diminishing their outlay. The evidence further establishes that after a scheme for a public movement had proved abortive, from $600 to $800 only having been raised in the way of contributions from ladies; and after the statue had been rejected by the commissioners of the Central Park, the defendants accepted it, and made use of it at the Centennial Exhibition in Philadelphia, where it was placed upon a pedestal, in a conspicuous position, to attract public attention; accompanied by a pamphlet for distribution, by whom written it does not appear, in which it was described as designed by the plaintiff, and cast in bronze, at a cost of $20,000; and that it was intended to be erected in the Central Park at the close of the Centennial Exhibition; and that during the time of its execution and of the bas-reliefs, the defendants paid the plaintiff various amounts upon it, including the price of the casting, to the extent of $7,700.76.

It further appears by the evidence, that the whole of the stock of the Howe Machine Company, with the exception of a few shares, is owned by L. S. Stockwell, the treasurer, and by his brother, who is the president; and that the negotiations with the plaintiff were made by the treasurer.

Upon the question of *ultra vires* it is sufficient to say that the charter of the corporation was not produced to show what it permitted, or what may have been forbidden by it; all that appeared by the oral testimony being, that the business of the company is to make and sell sewing machines; and the referee has found, in connection with that, that the statue and bas-reliefs constitute a species of advertisement, which, in connection with other things done by them, has the effect of keeping public attention drawn to their sewing machines; and this conclusion, on his part, is, I think, fairly inferrable from the whole of the testimony. But, independent of this, the defense

of *ultra vires* is not available by a corporation when a contract with them has been performed in good faith, and they have had the benefit of it; for whatever benefit was to be derived they obtained from the public exhibition of the statue and bas-reliefs, on a great national occasion, when people from all parts of the United States and from Europe went to Philadelphia to witness the industrial exhibition given in commemoration of the centennial anniversary of the declaration of American independence.

The statue was rejected upon the report of the committee appointed by the commissioners to examine it, upon the ground that, though it indicated "a commendable earnestness in the simplicity of its treatment," yet, "the lack of experience evinced in the modeling" failed to give it "the proper artistic qualifications to entitle it to a position in Central Park;" and according to the testimony of two of the committee, who are artists, J. Q. A. Ward and R. M. Hunt, it appears to have been a very indifferent work, both describing it as not being well posed, and Hunt, as being "logy," and impressing his mind as like a thing that might have been done in dough. It was made, however, after a model which was satisfactory to the defendants, and it does not appear from the testimony that it did not fully conform to the model which the company had approved. It evidently would have served their purpose, if they could have had it put up with the bas-relief in Central Park, and when they could not, notwithstanding its condemnation as a work of art, by the committee that rejected it, the company did not hesitate to get all the public effect which they could, in the use of it, by putting it up in the Centennial Exhibition, and by the distribution of the pamphlet, which was distributed, according to the testimony, in that part of Machinery Hall where the exhibition of the Howe Machine Company was placed, distinguishable by a sign bearing the defendant's name; the pamphlet being given to the witness who testified to the fact, by a lady there, who was in charge of the defendant's exhibition.

In such cases, where an article like this has been made in good faith, and gone to the use of the corporation, and made

available by them, as this was, in their business, the objection of *ultra vires* is not available (*Whitney Arms Co.* v. *Barlow*, 63 N. Y. 70; *Oil Creek R. R. Co.* v. *Penn. Transp. Co.*, 83 Pa. St. 160; *Moss* v. *Rossie Lead Min. Co.*, 5 Hill, 137; *Moss* v. *Averell*, 10 N. Y. 449; *Olcott* v. *Tioga R. R. Co.*, 27 id. 546); for, as was said by Judge Allen in the first of these cases, *Whitney Arms Co.* v. *Barlow*, the defense of *ultra vires* will not, as a general rule, prevail, when it would not advance justice, but, on the contrary, would accomplish a wrong.

It was not made a condition, when the plaintiff was employed to make the statue, that its acceptance would depend upon whether it would be received by the commissioners, and would be allowed by them to be placed in the Park. So far as respects that particular advantage, the defendants, when they employed the plaintiff to make it, took the risk. Being a thing made and intended for the benefit of the interest of the company, it was competent for the treasurer to contract for it, and did not require that the contract should be entered into with the concurrence of the whole, or of the majority of the board of directors; nearly the whole of the capital of the company belonging to the treasurer, who made the contract, and to his brother, the president.

The judgment, in my opinion, should be affirmed.

VAN BRUNT, J., concurred.

Judgment affirmed, with costs.