JOHN H. ALEXANDER et al., Respondents, *v.* WILLIAM CAULD-
WELL et al., Appellants.

One who deals with the officers or agents of a corporation is bound to know
their powers and the extent of their authority ; the corporation is only
bound by their acts and contracts which are within the scope of their
authority.

It cannot be presumed that the agent of a corporation had authority to
transact business which the corporation itself was not by its charter au-
thorized to engage in.

In an action against the trustees of a corporation to charge them with a
debt of the corporation because of an omission to make and file its annual
report, it appeared that it was organized for the purpose of mining
coal and bringing it to New York for its stockholders and for sale,
and this was stated in its certificate of incorporation. The treasurer
of the corporation wrote to plaintiffs under the heading of the corporate
name, stating that they desired plaintiffs to furnish them with coal de-
livered to any part of the city, as directed, plaintiffs collecting the bills
in the name of the company and being paid the difference due each
month; also to deliver the company's coal and to act as its delivery
agents. Plaintiffs answered assenting to the arrangement. Under it, upon
orders issued by the secretary and the treasurer, who were not directors
of the company, plaintiffs delivered coal to divers persons, and the
alleged indebtedness of the company was for a balance due upon the
coal so delivered. It did not appear that the coal was delivered to
stockholders or upon any contracts made by the company, or that the
transactions were known to any of its directors or appeared upon any of
its books. It did appear that they were not authorized by resolution of
the board of directors and that they were unknown to a majority of them,
and there was no competent evidence that the corporation received the
proceeds of the coal. *Held*, that plaintiffs failed to establish a debt against
the corporation and therefore that the action was not maintainable.

Also, *held*, that admissions of the treasurer, that he had received payment for
the coal and had used it in the business of the company was incompetent;
that he being unauthorized to buy the coal, could not bind the company
by subsequent admissions that he had received and disbursed the pro-
ceeds for its benefit.

(Argued December 17, 1880 ; decided January 18, 1881.)

APPEAL from judgment of the General Term of the Su-
preme Court in the first judicial department entered upon an
order made November 11, 1879, affirming a judgment in favor
of plaintiffs entered upon a verdict.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Wm. W. Niles* for appellants. The purchase of coal being directly within the objects for which the company was incorporated, and as its certificate of incorporation did not prohibit such purchase, the company is liable for the coal delivered by plaintiffs. (*South Yorkshire R. Co.* v. *G. N. R. Co.*, 9 Exch. 55, 85; *Bateman* v. *Ashton-under-Lyne*, 3 H. & N. 323; *Norwich* v. *Norfolk R. Co.*, 4 Ellis & B. 397; *Moss* v. *The Rossie L. M. Co.*, 5 Hill, 137; *State of Indiana* v. *Woram*, 6 id. 33; *DeGraff* v. *The American L. T. Co.*, 21 N. Y. 124; *Bissell* v. *The Michigan Southern R. R. Co.*, 22 id. 258; *Parish* v. *Wheeler*, 22 id. 494; *Steamboat Co.* v. *McCutcheon*, 13 Penn. St. 13; *Alleghany City* v. *McClurksen*, 14 id. 83; *Chester Class Co.* v. *Dewey*, 16 Mass. 94, 102; *Bulkley* v. *Derby Fishing Co.*, 2 Conn. 252, 255; *Parker* v. *Boston & Maine R. R.*, 57 Mass. 107, 108; *R. & B. R. R. Co.* v. *Proctor*, 29 Vt. 93; *Silver Lake Bank* v. *North*, 4 Johns. Ch. 370; *Life & F. Ins. Co.* v. *Mich. F. Ins. Co.*, 7 Wend. 31; *Palmer* v. *Lawrence*, 3 Sand. [S. C.] p. 161; *Sackett's Harbor Bank* v. *Lewis Co. Bk.*, 11 Barb. 213; *Bank of Genesee* v. *Patchen Bank*, 13 N. Y. 309; *Steam Nav. Co.* v. *Weed*, 17 Barb. 378; *Bissell* v. *The Mich. Southern, etc., R. R.*, 22 N. Y. 258; *Whitney Arms Co.* v. *Barlow*, 63 id. 62; *New York Loan & T. Co.* v. *Helmer*, 77 id. 64.) Persons may safely deal with the officers of a company at its office; and transactions made by them in the name of the company, and which the company has the right to make, are binding upon it. (*Howland & Aspinwall* v. *Myer*, 3 Conn. 290; *Conover* v. *The Mutual Ins. Co., etc., of Albany*, 3 Den. 254; *The Bk. of Vergennes* v. *Warren*, 7 Hill, 91; *Hascall* v. *Life Association of America*, 5 Hun, 151; affirmed, 66 N. Y. 616; *Hoag* v. *Lamont*, 60 id. 96.) In actions against the trustees of a corporation, the declarations of the company's officers are admissible in cases where they would be evidence against the company. (*Hoag* v. *Lamont*, 60 N. Y. 96.)

*John E. Parsons* for respondents. Statements of the treasurer were not strictly admissible to prove that the company had collected and used the proceeds of the coal. (*Alexander* v. *Brown*, 6 Hun, 645.) Proof of what the president said in reference to the matter was not competent. (*Custar* v. *Titusville Gas Co.*, 63 Penn. St. 381; *R. R. Co.* v. *Decker*, 82 id. 119.) Corporations, like natural persons, are only bound by such acts and contracts of their agents as are done and made within the scope of their authority. (*Chicago, etc.*, v. *James*, 22 Wis. 194.) The powers of a corporation must be determined by construing the language of its charter neither strictly nor liberally, but according to the fair and natural import of it, with reference to the purposes and objects of the corporation. (*The Toll Bridge Co.* v. *The H. & R. H. R. R. Co.*, 17 Conn. 454; *Downing* v. *Int. Washington R. R. Co.*, 40 N. H. 230.) The execution of its powers must be by the directors, expressed by resolution or agreement; and no majority, however large, has a right to divert the funds to any purpose not consistent with, and growing out of its original fundamental joint intention. (*Kean* v. *Johnson*, 1 Stockt. 401.) A corporation is restricted, both to the thing allowed by the legislature to be done, and the mode prescribed for its exercise. (*The Farmers' Loan and T. Co.* v. *Carroll*, 5 Barb. 613, 649.) It has no power except what is given by its incorporating act, either expressly or as incident to its existence. (*Beatly* v. *Knowler*, 4 Peters, 152; *Brady* v. *The Mayor, etc.*, 20 N. Y. 312; *Jackson* v. *Brown*, 5 Wend. 590.) Whoever contracts with a corporation, through its agent, must inquire into his authority, and a corporation is bound only where its agents keep within the limit of their authority. (*Silliman* v. *Fredericksburg R. R.*, 27 Gratt. [Va. Ct. of App.] 120; *Custar* v. *Titusville Gas Co.*, 63 Penn. St. 381; *Huntington, etc., R. R. Co.* v. *Decker*, 82 id. 119; *Westervelt* v. *Radde*, N. Y. Com. Pleas, Oct., 1877.) The authority must be proved, either expressly or impliedly, from his conduct as sanctioned by his principal. (*Thurman* v. *Wells, Fargo & Co.*, 18 Barb. 500, 519; *Dougherty* v. *Hunter*, 54 Penn. 380; *Martin* v. *Farns-*

*worth,* 49 N. Y. 555; *Banks* v. *Aymar,* 3 Hill, 262.) The party claiming under the contract must show it to be within the powers of the officer alleged to have made it. (*Farmers' Bk., Buck Co.,* v. *McKee,* 2 Penn. St. 318; *Blue* v. *Bear River Co.,* 20 Cal. 602.) The contracting party is bound to take notice whether the agent is departing from the usage of trade. (*Eastern* v. *Clark,* 35 N. Y. 225–232.) Even a subsequent ratification by the directors of similar transactions will not render other contracts valid. (*McCullough* v. *Morse,* 5 Den. 567; *Dubois* v. *N. Y. & H. R. R. Co.,* 1 N. Y. Legal Observer, 362.) The claimant must show not only that the agent had authority to bind, but that the company had the faculty to become bound. (*Hardwood* v. *Haines,* 9 Ala. [N. S.] 659.) In order to a ratification, the principal must have knowledge of what the agent had done, and must unequivocally manifest an intent to ratify it. (*Kuber* v. *Salsbury,* 33 N. Y. 648.)

EARL, J.   This action was commenced by the plaintiffs who claimed to be creditors of the New York Mutual Coal Company, a corporation formed under the laws of this State, against the defendants, trustees of the corporation, to enforce their liability to them, as such creditors, for omitting to publish and file the annual report required by section 12 of chapter 40 of the Laws of 1848, the act for the formation of manufacturing and mining companies.

The defendants defended the action on the ground that the plaintiffs had no claim against the corporation and whether there was proof sufficient to show that they did have is the only question which it is deemed important now to consider.

It was stated in the certificate of incorporation of the coal company that it was formed "for the purpose of working coal mines and the mining for coal in the mines situated on the De Long Tract, so called, in the township of Blythe, Schuylkill county, State of Pennsylvania, which shall be held by said company under leases, and the transporting to market and vending of said coal"; and in a prospectus issued by the com-

pany, the purposes and mutual character of the company were more fully disclosed. The coal was to be mined at the places indicated in the certificate of incorporation and transported and delivered to stockholders at actual cost, each stockholder being entitled annually to one ton of coal for every share of stock held by him, the shares being at the par value of ten dollars each; and if more coal should be mined than was needed on this plan to supply the stockholders, the balance was to be sold at market rates and the profits divided among the stockholders.

It was no part of the business of the corporation to purchase coal in the market and sell it to its stockholders or to others, or to sell coal to others except in the case of surplus not needed to supply its stockholders.

The coal company was organized in the latter part of the year 1865, and in the spring or summer of 1866 it commenced its mining operations in Pennsylvania on a small scale, and it brought, so far as the case discloses, but one boat load of coal to New York, and that was distributed to its stockholders. It had a president, Mr. Browne; a treasurer, Mr. Ball; a secretary, Mr. Neal, and a general agent, Mr. Carpenter. The powers and duties of these officers, so far as appears, were not defined by by-laws or resolutions of the board of directors. Their powers, so far as we know, were such only as may be inferred from the names of their offices. The business of the company, so far as it did any, was, in the main, managed by them. The company had an office in the city of New York where the secretary and treasurer, who were not directors, were generally present, and the president and directors were also occasionally there.

On the 30th day of June, 1866, Ball, the treasurer, addressed a letter under the heading "New York Mutual Coal Co." to the plaintiffs, who were retail coal dealers in the city of New York, in which he said: "We wish to make an arrangement with you to furnish us coal at as low price as possible, delivered to any part of the city we may direct, you collecting the bills in the name of our company, and we paying you the difference

due each month; also to deliver all coal from our mine as it arrives, and any balance left over to store in your yard, or in other words, your firm to act as delivery agents for our company." This letter the plaintiffs answered on the 2d day of July assenting, substantially, to the proposed arrangement.

Under this arrangement, upon orders issued by Neal and by Ball from the office of the company, the plaintiffs, between July 4th and August 10th, 1866, delivered coal to divers persons to the value of nearly $1,000, and this action is brought to recover the balance due them for this coal.

It does not appear that this coal was delivered to stockholders of the company or upon any contracts made by the company, and it does not appear what connection, if any, it had with the business of the company. It does not appear that these transactions were known to any director of the company, or that they appeared upon any books of the company, and it affirmatively appears that they were not authorized by resolution of the board of directors and that they were entirely unknown to a majority of the directors.

We have not here the question which would have to be considered if these transactions, outside of the legitimate business of the corporation, had been actually authorized by the board of directors. But we have the question whether the company was bound for this debt thus created by its secretary and treasurer assuming to act for it. We are of opinion that it was not.

Every one knows that corporations are artificial creations existing by virtue of law, and organized for purposes defined in their charters; and he who deals with one of them is chargeable with notice of the purpose for which it was formed; and when he deals with agents or officers of one of them, he is bound to know their powers and the extent of their authority. Corporations, like natural persons, are bound only by the acts and contracts of their agents done and made within the scope of their authority (Angell & Ames on Corp. 288, 301.)

Here the plaintiffs were chargeable with knowledge that this corporation was organized for the purpose of mining coal and bringing it to New York for its stockholders or for sale.

They were chargeable with notice that it was no part of the legitimate business of the corporation to go into market and buy coal for sale again to others. And it was not, upon any facts here appearing, within the scope of any apparent authority conferred upon the secretary and treasurer to purchase this coal of the plaintiffs. It can never be presumed that an agent of a corporation had authority to transact business which the corporation itself was not, by its charter, authorized to engage in.

And this purchase of coal was not ratified by the company. It does not appear that this business was so carried on at the office of the company that any of its directors would have knowledge of it; nor does it appear that it was entered in the books of the company where they would receive notice of it. There was some evidence, by no means satisfactory, that the president of the corporation, now dead, had some knowledge of these transactions; but, even if he did have, it could make no difference, as he had no more power than the secretary or treasurer to bind the company in this illegitimate business.

We have not here the question we would have to consider if the corporation had actually had the benefit of this coal, by the receipt into its treasury of the proceeds thereof, because there was no competent evidence of such receipt. It is true that evidence was given, against the objection of the defendants, that the treasurer had admitted at some time, that he had received payment for the coal delivered by the plaintiffs, and had used it in the business of the company. But such admissions do not appear to have been made as part of any *res gestæ*, and they were not competent against the company and did not prove the fact of receipt by it. The fact, if important, should have been proved by calling the treasurer as a witness, or by the books of the company, or in some other legitimate way. He was unauthorized to buy the coal, and he certainly could not bind the company by afterward admitting that he had received and disbursed for the company the proceeds thereof. (*Soper* v. *Buffalo & Rochester Railroad Company*, 19 Barb. 310 ; *Niagara Falls Susp. Bridge Company* v. *Bachman*, 66 N. Y. 261 ; *Salem Bank* v. *Gloucester Bank*, 17 Mass. 1–29 ; *Allegheny*

*County Work-house and Inebriate Asylum* v. *Moore*, in the Supreme Court of Pennsylvania, October 25, 1880.)

We are therefore of opinion that the plaintiffs did not establish any debt against the corporation, and hence that this recovery cannot be upheld.

The judgment should be reversed and new trial granted, costs to abide event.

All concur, except FOLGER, Ch. J., and ANDREWS, J., not voting, and MILLER, J., absent from argument.

Judgment reversed.