Hyatt, J.
This was an action by the payee of a promissory note against the joint and several makers thereof. The case was not tried as to the defendant Hopkins. The note is in the words following:
“New York City, N. Y., Od. 1, 1884.
“On the 1st day of January, 1885, we or either of us promise to pay to the order of Charles Negley $500, with interest at six per cent from date, for value received.
“Notice of protest waived.
“THE COUNTING BOOM CO. (limited).
“By S. B. Hopkins, Manager.”
The defendant corporation simply denied the making of the note. There was a conflict of evidence as to the making and giving of the note, and as to what took place at that time. The plaintiff swore “that he received the note from Hopkins, the manager of the defendant corporation; that he saw Mr. Sprague, its president, before he took the note, having been referred to Mr. Sprague by Mr. Hopkins. Plaintiff asked Mr. Sprague whether Hopkins was agent of the company and had the right to draw a note of this kind for $500, and Sprague said Hopkins had the right, and that the note would be good. Thereupon plaintiff drew up the note, and it was signed by Mr. Hopkins, in his presence.”
Mr. Sprague, the president of the defendant corporation, swore “ that Hopkins was its manager; also, was its secretary and treasurer at one time, and mostly had entire charge of the business; that Mr. Abbott was at another time.” He denied that the plaintiff’s statement of their interview was correct, but admitted “that plaintiff asked him if the note of the company, endorsed by Mr. Hopkins would, in his judgment, be good, and he said he thought it would.”
“The conversation arose when Negley was to loan money to Hopkins or perhaps to the company. He did not know why he should discuss the matter of the note, endorsed by Mr. Hopkins, and say it would be good if the money was not to go into the company. He was present at all the meetings of the directors and officers of the company, and that no authority was ever conferred, directly or *300 indirectly, upon Mr. Hopkins to make a promissory note for the company.”
As to the matter of where the money went there was a like conflict of evidence. Plaintiff swore “that he paid the $500 in actual cash to Mr. Hopkins; that it was paid to Mr. Hopkins and the Counting Room Company.” Sprague swore “that he believed it to be a private matter of Mr. Hopkins, but did not know.”
Upon these disputed facts and with the witnesses before them, the jury, by their verdict, gave credence to the plaintiff’s testimony, and having seen and heard the witnesses testify, it is only in a very strong case, where the conclusion appears to us to be irresistible, that their verdict as to the facts was erroneous, that we would substitute our judgment for theirs. In the case at bar there was not only some evidence to go to the jury, but the same was conflicting; their verdict, then, should not be disturbed unless clearly and unmistakably erroneous.
The case of Hopkins v. The Third Avenue R. R. Co. (40 N. Y. Supr. Ct., 175), cited by the learned counsel for the appellant, is not applicable, except, indeed, to negative his own contention. It simply decides that when the verdict of the jury is clearly wrong, and ought to have been for the defendant instead of the plaintiff, that the judgment should be reversed.
The jury in this case determined as facts, that the making and delivery of the note signed “The Counting Room Co. (limited), by S. R. Hopkins, manager,” was an act within the scope of Hopkins’ authority, and that the corporation had conferred upon him such authority to so act, or that the defendant corporation had received the money for which the note was given for its own benefit.
Although Sprague swore that no authority was conferred upon Hopkins by the directors to make a promissory note for the company at any of their meetings, yet he admitted, with equal positiveness, “that Hopkins had mostly the entire charge of the business;” his only qualification was “that he does not know that he has charge of it entirely.” If the jury found as a fact, and we must assume that they did, that Hopkins had mostly the entire charge of the business, I think such fact should be sufficient to show that the act of Hopkins was within the scope of the general powers so conferred upon him, and incidental to and necessary for the conduct of the company’s business. Farmers’ Bank, Buck County v. McKee, 2 Penn. St., 318; Blue v. Bear, River County, 20 Cal., 602.
The court in Hoag v. Lamont (60 N. Y., 96), held, “that neither the corporate seal or a formal resolution of the *301 managers is necessary to the making of a valid contract by a corporation.”
The learned counsel for the appellant cites the case of Alexander et. al. v. Cauldwell et. al. (83 N. Y., 480), as being in conflict with the above decision. It is distinguishable, however, from Hoag v. Lamont and the case at bar, in this, that while enunciating the general principle of law, that “ the corporation is only bound by their acts and contracts within the scope of their authority; ” it adjudicates that “it cannot be presumed that the agent of the corporation had authority to transact business which the corporation itself was not by its charter authorized to engage in,” this was the issue there considered and not the one here presented for review.
Upon the question of ultra vires it is sufficient to say that the charter of the corporation was not produced to show what it permitted, or what may have been forbidden by it. If the jury found that the plaintiff advanced money to a company publishing a periodical, their conclusion that it was received by the company-in a transaction of business which it was authorized to engage in, is clearly inferable from the testimony. But, independent of this, the defence of ulti a vires is not available by a corporation, when a contract with them has been performed in good faith, and they have had the benefit of it. Ellis v. Howe Machine Co., 9 Daly, 78. Upon this point under the finding of the jury for the plaintiff this case is clearly within the rulipg of Kraft v. Ihe Freeman Printing and Publishing Association (87 N. Y., 628). In that case the defendant’s president and general manager borrowed money of the plaintiff to aid the company. The learned court held that the defendant’s offer to prove, that the money thus lent its president was not paid by him into the association, nor used for the payment of its debts or liabilities was properly excluded. It was further held that unless the plaintiff acted in bad faith, the proof was wholly irrelevant, and that it made no difference whether any resolution was ever passed by the board of trustees, or whether it was a fact that some of the trustees did not know that the president borrowed the money.
I cannot find error in the judge’s charge or his rulings on the trial.
The judgment and order appealed from should be affirmed, with costs.
Browne, J., concurs.