HATCH, J.
This action seeks to charge a personal liability upon the defendants as stockholders of the National Electric Manufacturing & Construction Company of New York, a corpor-" ation organized, as appears by its charter, for “the manufacture of electric lamp sockets, safety cut-outs and the appliances connected with and used in the setting up and perfecting of electric machinery arid electric light and electric moror plants for public and private uses and purposes.” Its capital stock was $50,000, divided into 500 shares of $100 each. The defendants were the only stockholders of the company, and there was issued to each defendant 100 shares of stock, of the par value of $10,000. for which they paid nothing. The company was organized in May, 1890. On April 1st of the same year, the defendants Murray and Latshaw entered into a contract with the National Electric Manufacturing Company of Eau Claire, Wis., whereby they acquired the exclusive right and license, as agents, for the sale of electrical supplies manufactured by said company, in a portion of the state of New York, and in three other Eastern states. The trustees of the New York corporation purchased this contract of the defendants Murray and Latshaw, and as consideration therefor issued to said defendants the remainder of its capital stock. It does not appear that the contract was ever assigned or delivered to the corporation. The corporation did business until 1893, when it became insolvent, petitioned for its dissolution, and was placed in the hands of a receiver. No money was paid for any of the stock issued, and by section 10, Laws 1848, under which the coriporation was organized, liability against the stockholders would 'be created unless they are relieved by other considerations.
Appellants meet this by the claim that the transfer of the con- , ract was a purchase of the property by the corporation, author *852 ized by Laws 1853, c. 333, which amended the act under which it was incorporated. This act provides:
“The trustees of such company may purchase mines, manufactories and other property necessary for their business, and issue stock to the amount of the value thereof in payment therefor; and the stock so issued shall be declared and taken to be full stock and not liable to any further calls; neither shall the holders thereof' be liable for any further payments under the provisions of the tenth section of said act.”
This claim is the sole question presented by this appeal. By the terms of this amendment the property purchased must be such as is necessary for the. business of the corporation, and it has been held that whether the property purchased was in fact necessary for the purposes of the corporation was to be determined in the same manner as other controverted questions. Schenck v. Andrews, 46 N. Y. 589; 57 id. 133.
3This contract did not provide for furnishing any material for purposes of manufacture bv the corporation. The company which executed it proposed to furnish a manufactured article, and constituted the defendants agents to sell; and by its terms the defendants agreed to organize a company for the purpose of placing the manufactured article upon the market in the specified localities. In what view, then, can it be said that it was necessary for the business of this corporation, which was organized solely to manufacture? An agency to sell is in no sense a business of manufacturing. People ex rel. U. P. Tea Co. v. Roberts, 145 N. Y. 375; 64 St. Rep. 827. It is doubtful if this license to sell, is property, within the meaning of the section invoked. It is not necessary, however, to determine that question, and we express no opinion thereon.
Hot only was this license to sell the manufactured article of another company not necessary for any business which could be lawfully carried on by this corporation, but the contract was ultra' vires of it make. The character of a corporation is the measure of its power, and the enumeration of these powers implies the exclusion of all others. Thomas v. Railroad Co., 101 U. S. 71. The., business proposed to be carried on under the contract was entirely foreign to the character and scope of the business for which the corpotation was chartered. As was said by judge Earl, in speaking of a similar case:
“It could not lawfully engage in this foreign business simply because it could make a profit therein. A corporation may foster its legitimate business by all the. usual and appropriate means. But it cannot, under the pretense of fostering, engage in transactions entirely ultra vires.” Holmes v. Willard, 125 N. Y. 75; 34 St. Rep. 455.
In the present case nearly the entire corporate stock was devoted to making á market for the manufactured article of another! concern, in which,, by the use of its property for that purpose, this1 corporation was wholly unable to carry on the manufacture of those .articles for which it w.as brought into being, and thus was wholly destroyed the purpose of its creation, The following cases *853 are abundant authority for the view here taken: Thomas v. Railroad Co., supra; Minturn v. Larue, 23 How. 435; Alexander v. Cauldwell, 83 N. Y. 480; Diligent Fire Co. v. Com., 75 Pa. 291; Machine Co. v. Wilkinson, 79 Ala. 312; Lime Works v. Dismukes (Ala.) 5 Lawy. Rep. Ann. 100, and note, 6 South. 122.
It is true that a corporation, like individuals, has capacity to' contract, and it may be said, generally, that there is this difference: The latter may make all contracts that are not forbidden by law or opposed to the general welfare of society, while the former possesses those powers which are expressly granted, and the contract which it makes must be directly connected with those purposes and those which are necessary to accomplish the object of its creation. It is by no means certain that this contract could be assigned to this corporation. By its terms the defendants who ex-executed it agreed to organize a stock company with a bona fide paid in capital of not less than $25,000, and with that to thoroughly canvass the territory allotted to them for the sale of the system of electricity and supplies manufactured. That was a part ■of the contract, and it does not appear that defendants were authorized to assign it upon any other terms. The corporation to whom it is claimed that it was transferred in no sense answered its terms. But, whether we say it was never assigned, or could be assigned, it is clear, for reasons already stated, that the contract was not property necessary for the use of a corporation, that the contract by which it was transferred to it was ultra vires, and the issue of the stock therefore was unlawful.
It follows that the judgment appealed from should be affirmed, with costs.-