(149 App. Div. 356.)

JACOBUS v. JAMESTOWN MANTEL CO.

(Supreme Court, Appellate Division, Fourth Department. March 6, 1912.)

1. BILLS AND NOTES (§ 351*)—EQUITIES AGAINST ASSIGNEE—TRANSFER AFTER MATURITY.

The transferee of a note after maturity takes it subject to any defenses of the maker against the assignor.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 878–881, 882½–885; Dec. Dig. § 351.*]

2. BILLS AND NOTES (§ 497*)—ACTION—PRESUMPTIONS AND BURDEN OF PROOF.

Where a corporation, having no express power to make accommodation paper, executes an accommodation note, the note and its renewals are prima facie invalid, and a transferee after maturity must show that his transferror was a holder for value in good faith before maturity.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1675–1687; Dec. Dig. § 497.*]

3. CORPORATIONS (§ 467*)—POWERS—ISSUING ACCOMMODATION NOTES.

A corporation has no power to issue or indorse, for the accommodation of others, notes in which it has no interest.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1831; Dec. Dig. § 467.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CORPORATIONS (§ 428*)—OFFICERS—NOTICE TO OFFICER—EFFECT.

Notice coming to an officer of a company, as the vice president, an active member of its investment committee, having by direct delegation personal management of certain matters for it, is notice to the company; but when the officer to whom the notice came was not at the time acting in good faith for his company, but was acting for his own benefit and in hostility to the company, then notice to him is not notice to the company.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1748–1761; Dec. Dig. § 428.*]

5. EVIDENCE (§ 69*)—PRESUMPTION—FRAUD.

As long as the action of the officer of a banking institution in aiding another to negotiate an accommodation note of the corporation, invalid for want of authority, can be explained consistently with an honest purpose, no intention to defraud the institution will be presumed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 90; Dec. Dig. § 69.*]

6. BANKS AND BANKING (§ 315*)—TRUST COMPANIES—NOTICE TO OFFICER—EVIDENCE.

Evidence, in an action by the holder of an accommodation note executed by a corporation not expressly authorized thereto, held sufficient to support a finding that an officer of the trust company by whom it was discounted had no purpose to defraud the trust company, so that notice to him of the accommodation nature of the paper would be notice to the trust company.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1219–1221; Dec. Dig. § 315.*]

7. CORPORATIONS (§ 397*)—OFFICERS AND AGENTS—SCOPE OF AUTHORITY.

A corporation is bound only by the acts and contracts of its agents done and made within the scope of their authority.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1585, 1586, 1588, 1589, 1596–1601; Dec. Dig. § 397.*]

8. CORPORATIONS (§ 399*)—OFFICERS—TREASURER—AUTHORITY.

The treasurer of a corporation is not vested with implied power to make negotiable paper in its name, though particular circumstances may exist which would create such an implied power.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1588, 1602–1610; Dec. Dig. § 399.*]

9. CORPORATIONS (§ 432*)—ACCOMMODATION NOTE—ACTION—SUFFICIENCY OF EVIDENCE.

In an action by the holder after maturity of an accommodation note, executed by the treasurer of a corporation, not expressly authorized thereto, evidence held insufficient to show that the provisions of the by-laws were intentionally disregarded so as to confer implied authority upon the treasurer to do what was by express provision limited to the president alone.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1737, 1743, 1762; Dec. Dig. § 432.*]

10. CORPORATIONS (§ 433*)—ACCOMMODATION NOTE—QUESTION FOR JURY—AUTHORITY OF TREASURER OF A CORPORATION.

The fact that the treasurer of a corporation, not expressly authorized to execute accommodation notes, had executed other accommodation notes which the corporation had paid, is not sufficient to charge the corporation, as a matter of law, with liability on an accommodation note, and even its long acquiescence in the practice of permitting such execution, not otherwise directly authorized or inferable from the circumstances, presents merely a question of fact for the jury.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1706, 1719, 1738, 1744; Dec. Dig. § 433.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

11. APPEAL AND ERROR (§ 909*)—REVIEW—PRESUMPTION IN SUPPORT OF VERDICT.

On appeal in an action by the holder of an accommodation note signed by the treasurer of the defendant corporation, not expressly authorized thereto, it will be presumed, in support of a verdict for defendant, that the plaintiff failed to show either acquiescence or ratification by the corporation's trustees of the power assumed by the treasurer.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3675; Dec. Dig. § 909.*]

McLennan, P. J., and Kruse, J., dissenting.

Appeal from Trial Term, Chautauqua County.

Action by Warren Jacobus against the Jamestown Mantel Company. Judgment for defendant on a directed verdict, and plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Yorke Allen, for appellant.

August Becker, for respondent.

ROBSON, J. The action is based upon a promissory note of which the following is a copy:

"$2,500.00.                                    New York, Oct. 8, 1909.

"Six months after date we promise to pay to the order of ourselves two thousand five hundred & 00/100 dollars at Newton Trust Co., Newton, N. J. Value received.                        Jamestown Mantel Co.,
                                            "Geo. M. Turner, Treas."

Indorsed:

"Jamestown Mantel Co.
    "Geo. M. Turner, Treas."

This was the last of a series of renewals of like tenor; the original note of the series bearing date August, 1907.

[1] The defendant, Jamestown Mantel Company, is a domestic manufacturing corporation located in Chautauqua county, and the original note of the series was purchased by the Newton Trust Company, a banking corporation located at Newton, N. J. Plaintiff is the holder of the note in suit by transfer thereof from the Newton Trust Company after maturity. His connection with the transaction is not explained further than that simple fact. Of course, any defense to the note, if it were still owned by the trust company, remains equally available to defendant in this action.

[2, 3] It is not disputed that the original note was an accommodation note pure and simple, that defendant had none of the proceeds thereof, received no advantage therefrom in any way, and had no power expressly conferred upon it to make accommodation paper. Prima facie the note as well as each of the renewals was entirely unauthorized, and therefore invalid; for it is well established that a corporation has no power to issue, or indorse for the accommodation of others, notes in which it has no interest. National Park Bk. of N. Y. v. German Am. Mutual Warehousing, etc., Co., 116 N. Y. 281, 22 N. E. 567, 5 L. R. A. 673; Fox v. Rural Home Co., 90 Hun, 365,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

35 N. Y. Supp. 896, affirmed 157 N. Y. 684, 51 N. E. 1090. It was necessary, therefore, for plaintiff to show that his transferror, Newton Trust Company, was a holder for value, in good faith, and before maturity.

The Newton Trust Company invested to a considerable extent in commercial paper, and its directors had named an investment committee consisting of three members of the directorate viz.: Hough, its president; Searing, its vice president; and George, apparently a director. Plaintiff's witness Hough testified that the duties of this committee included the purchase and sale of "such paper as might be for the interest of the bank to buy, or sell. When the bank had money to loan, it would advise the committee in New York of the fact and ask them to purchase paper; secure some. Sometimes they would call us up and ask us if we had any money to loan, and state at the same time that they had some good paper in which we could invest if we had the funds." And on such occasions, if they recommended the paper, if the bank had the money, "we would say send it on." The trust company's connection with the note in question originated "under such a method." The investment committee was appointed for the purpose of passing on all of that paper. Hough lived at Newton, and Searing and George were the constituent members of the firm of Searing & George, bankers and brokers, doing business in the city of New York. Searing was a lawyer, as well as a banker, and besides being vice president of the Newton Trust Company, seems to have been connected with another trust company at Dover, N. J., and was also the president of a railroad corporation known as the Delaware & Eastern Railroad. Welch, a lawyer doing business in New York, was the attorney for this railroad company and also acted as Searing's attorney. He had also done some business for the defendant.

In August, 1907, the railroad company was indebted to Welch in a considerable amount for services; and, as a result of his demand upon Searing, its president, for a payment on account, the company not then being in funds, he was told by Searing that, if he "could borrow a note from somebody for a short time," Searing would have it discounted for him at one of Searing's trust companies. Welch then saw Turner, the treasurer of defendant, and got the original note of the series. This, as he testifies, he delivered to Searing, who said "he would try to have it discounted for me at one of his trust companies, meaning the Newton Trust Company and the Dover; he represented that he controlled both of them. Then I gave him the note, and he said he would send me the proceeds." Searing thereupon called Hough at Newton on the telephone, and, though Hough does not recollect the conversation in any of its details, an arrangement seems to have been made by which the trust company was to take the note; for on the 6th of August Searing inclosed it in a letter to Hough stating that he was inclosing it in accordance with the telephone conversation of that date, and asking that he remit the proceeds. On receipt of the note Hough inclosed in a letter to Searing a draft for $2,425 payable to the order of Searing & Co., stating it

was net proceeds of note of Jamestown Mantel Co. Searing cashed the draft, and, instead of turning the proceeds over to Welch, kept them, telling Welch that his companies were not then in funds, but that he might be able to get it later. Before the note matured, he told Welch he had discounted the note, but had used the money himself, as he needed it very badly. When the note became due, Welch, at Searing's request, got from Turner a renewal; and thereafter, as the notes matured, renewals were obtained by Welch from the same source, and sent by him or Searing, usually with his check for the discount, for which he was then or thereafter reimbursed by Searing. Hough says that he did not know the defendant, or Turner, or where the corporation was located, and made no inquiry as to the note or the financial responsibility of defendant; and, as he says, "simply the fact that it came to us from two members of this investment committee who had facilities for knowing all about it, satisfied me." Again he says, "I relied on the information of the purchasing committee." This trust company, as is apparent from the evidence, had had many dealings with Searing & Co. in the purchase of similar securities, and its management was willing to rely upon the judgment of those members of its investment committee, Searing's judgment being especially favored, as to the merit of securities in which they dealt; and also to be content to deal with them in the dual capacity of brokers selling commercial paper and members of its own investment, or purchasing, committee.

[4] Searing had full knowledge of the fact that this was an accommodation note. It is a familiar principle that notice coming to an officer of a company (i. e., Searing, the vice president, and active member of its investment committee, having by direct delegation, personal supervision and management of similar concerns for it) is notice to the company. But plaintiff claims that this case comes within the exception to this general principle that when the officer to whom the notice came was not at the time acting in good faith for his company, but, on the contrary, in the execution of some sinister scheme of his own at the expense of his company and for the benefit of himself, or others in hostility to his company, then notice to him is not notice to his company. Among the many cases in which this exception has been recognized are Brooklyn Distilling Co. v. Standard Distilling & Distributing Co., 193 N. Y. 551, 86 N. E. 564, and Henry v. Allen, 151 N. Y. 1, 45 N. E. 355, 36 L. R. A. 658.

[5] But the facts as shown by the evidence do not bring this case within the exception. Searing's proposition to Welch was that he should borrow a note, which he would have discounted. This indicated only that Searing intended that an accommodation note, valid as such, was then in his mind. From whom it was to be obtained was not discussed. Welch, acting on the suggestion, produced the note in question. Whether it was, or was not, valid was not then, or at any time, the subject of discussion between Searing and Welch; and the evidence does not point to the conclusion that either of them then had in mind the fact that the note was invalid, as being corporation accommodation paper. For aught that appears, they both might then

have honestly believed that the note was just as valid as any other accommodation paper. If that be true, then certainly no intention to defraud the trust company can be presumed, so long as Searing's action can be explained consistently with an honest purpose. Lopez v. Campbell, 163 N. Y. 340, 57 N. E. 501.

[6] Doubtless Searing's intent and purpose in the transaction was to be determined by the trial court as matter of fact. This he has apparently passed upon favorably to defendant's claim that no intention to defraud or act adversely to the interests of his principal in the transaction the Newton Trust Company was shown. The trial justice says in his opinion:

"His (Searing's) interest was therefore not such as to suggest a scheme to defraud his principal, in which case the presumption is he would not disclose but rather keep secret what would expose and defeat his purpose. It is true after the bank remitted the proceeds of the note Searing converted them; but there is nothing in the evidence to show that he had formed a purpose to convert before he received the proceeds. The mere fact that he did convert is not enough to raise the presumption that he planned this out so he could steal the money."

Such a finding is supported by the evidence and should not be disturbed. Upon this ground alone the judgment should be affirmed.

Appellant is also confronted with the initial difficulty that it does not appear that the note is in fact the note of defendant. Defendant was the payee named in it, and in each in the succession forming the series of renewals. They were signed "Jamestown Mantel Company, George M. Turner Treasurer," and indorsed in like manner.

[7] Of course, a corporation must necessarily act by agents; and they, "like natural persons, are bound only by the acts and contracts of their agents done and made within the scope of their authority." Alexander et al. v. Caldwell et al., 83 N. Y. 480, 485.

[8] The note and its renewals were all concededly made and signed by defendant's treasurer. I quote from Daniel on Negotiable Instruments (5th Ed.) vol. 1, § 394:

"The treasurer of a corporation authorized to pay and discharge a debt is not thereby empowered to execute a note for it, being without funds in hand. And the treasurer of a corporation is not such an officer as is vested with implied power to make negotiable paper in its name, though particular circumstances might exist which would create such an implied power."

To a similar effect are the statements in reference to the same subject found in Edwards on Bills, § 65, and Beach on Private Corporations (2d Ed.) vol. 2, § 804. Indeed, it would seem that without proof of authority to make negotiable paper the simple fact that such paper was signed by any officer of a corporation, even the president and secretary, does not show that it was made by its authority. People's Bank v. St. Anthony's R. C. Church, 109 N. Y. 512, 523, 17 N. E. 408. It is true that authority may be shown in various ways.

[9] But in this case defendant's by-laws, which are in evidence, gave such authority only to its president. Implied authority in the treasurer to sign notes for it was sought to be established on the trial by showing that the treasurer had in fact signed other notes for the corporation. One such note, made about the time the original of the

series in question was made, was proved; and also the fact that it had been paid by defendant. Turner himself swears that he signed other notes and that he believes the company honored them. There is also some general evidence by a banker and a bookkeeper of defendant that notes signed by the treasurer were paid by the company. The dates or particulars of these notes are not given, and the evidence is most general in character, entirely insufficient to warrant a finding that the provisions of the by-laws were consciously and intentionally disregarded, and implied authority conferred upon the treasurer to do what they by express provision had limited to the president, as a power to be exercised by him alone. It should also be observed that as Turner says the other notes of the company, which he signed, were all made and honored in the ordinary course of business of the company, and there is absolutely no evidence to show that he ever had signed an accommodation note in the company's name, except those of this series.

[10] Though it had been shown that Turner had made many other notes in manner like the one in question, that of itself would not be sufficient to charge defendant as matter of law with liability on the note in question. National Bank of the Republic v. Navassa Phosphate Co., 56 Hun, 136, 8 N. Y. Supp. 929. At most, even a long acquiescence in the practice of permitting such signing and indorsement, not otherwise directly authorized, or done by authority necessarily to be inferred from the circumstances, presents simply a question of fact to be passed upon as other questions of fact are determined. Bank of Monongahela Valley v. Weston, 159 N. Y. 201, 54 N. E. 40, 45 L. R. A. 547; Smith v. Weston, 159 N. Y. 194, 54 N. E. 38. The questions there considered involved the right of a partner to indorse the partnership name as accommodation indorser; but the same principle applies here. The by-laws gave no authority to the treasurer to sign notes. In fact, as I have said, such authority was withheld, because it was in terms conferred upon another officer.

[11] It was, therefore, as was said by Cullen, J., in Bangs v. National Macaroni Co., 15 App. Div. 522, 44 N. Y. Supp. 546—

"necessary for the plaintiff, in order to establish the liability of the defendant upon the notes, to show either acquiescence or ratification by the trustees of the power assumed by the treasurer to issue notes, or such a course of dealing by that officer and such negligence on the part of the trustees as would estop the defendant from denying the treasurer's authority. The evidence we think in this case is insufficient for this purpose. At most it presented no more than a question of fact for the jury."

In support of the verdict directed, that fact, it should be assumed, was found in favor of defendant's contention. No question of estoppel arises; for, so far as appears, no one connected with the Newton Trust Company ever knew of Turner, his relations to or connection with defendant, or his activities as its officer, till the first note of the series was presented.

The judgment and order should be affirmed, with costs. All concurred, except McLENNAN, P. J., who dissented in opinion in which KRUSE, J., concurred.

McLENNAN, P. J. (dissenting).   Many of the facts in this case are not in dispute.   The plaintiff is the assignee of a trust company, organized under the laws of the state of New Jersey, and he brings this action to recover upon a promissory note which was held by such trust company and transferred to him, which, in form, was made by the Jamestown Mantel Company, a domestic corporation, signed and executed by its treasurer, a Mr. George M. Turner.   The action is brought to recover upon a renewal note, but the validity of such note and the right of the plaintiff to recover thereon depend entirely upon the original note and the circumstances under which it was given.

It appears that one Mr. Hough was president of the Newton Trust Company, plaintiff's assignor, and that a Mr. Searing, who was an attorney and counselor at law and also a member of a brokerage firm is the city of New York, was vice president of the Newton Trust Company, and that his partner in such brokerage firm was also a director of the Newton Trust Company.   Searing was also president of a railroad corporation, and one Welch was in the employ of said railroad corporation and had also rendered personal services for Searing.   It appears that their relations were close and confidential.   At a certain time Welch demanded of Searing, as president of the railroad corporation, payment for services rendered by him to such corporation. Searing said, in substance, "We are short of money.   You procure a note" (nothing said about the character of the note), "for $2,500, and I will procure it to be discounted."   Thereupon Welch went to Turner, the treasurer of the defendant corporation, and procured from him a note of such corporation, signed and executed by him as treasurer and delivered to Welch.   Welch took such note, delivered it to Searing, and Searing, knowing that no consideration had passed to the Jamestown Mantel Company for such note, sent it to the president of the Newton Trust Co., plaintiff's assignor, and asked that it be discounted. The president of the trust company, fully believing that Searing was sending to him a valid instrument, discounted the same and sent the proceeds to Searing, who was one of the committee on investments, and a lawyer, who would be presumed to know the law in such regard. Searing received the proceeds and stole or appropriated the money to his own use.   When Welch came to demand the results of the note which he had procured, Searing suggested that he had been hard pressed, that it was absolutely necessary that he should have some money, and that he had in fact used the proceeds of such note for his personal use or benefit.   By promises made by Searing to Welch that he would eventually be taken care of in the transaction, nothing further developed for a time.   The note thus originally given was renewed from time to time, first at the instance of Searing; then, through the instrumentality of Welch, the treasurer of the Jamestown Mantel Company executed a renewal of the note, and in that manner the giving of a renewal note was continued until the action was brought to recover upon the note involved in this lawsuit.

Under the circumstances disclosed by the evidence in this case, I think it conclusively appears that Searing entered upon the perpetration of his fraud upon his trust company when he received the note

of the Jamestown Mantel Company from Welch, then knowing full well that the Jamestown Mantel Company was not indebted to Welch for services or otherwise, because he (Welch) had been employed serving the railroad corporation of which Searing was president, and serving Searing. So that my conclusion is that the Newton Trust Company took the note without knowledge of its infirmity; that it was not charged with knowledge such as was obtained by Searing, although an officer and director of the trust company, when engaged in an attempt to perpetrate a fraud upon such trust company, the essential of its success being that the trust company should not know his design in the premises. The authorities pro and con are cited in the opinion of Justice ROBSON.

The question remains whether in any event the defendant is liable, because it is said that the treasurer had no authority to sign an accommodation note. He had authority, as appears by the uncontradicted evidence, to sign notes, and I fail to understand how a purchaser in good faith is called upon to determine whether one note signed by the treasurer represents an equivalent to the corporation, or whether another signed in the same manner may be regarded as an accommodation note, when either of the notes comes into the hands of an honest purchaser for value. If I am right in my first conclusion that the Newton Trust Company took this note in good faith, believing it to be the valid obligation of the defendant corporation, then it follows, as it seems to me, that it was entitled to recover upon such note.

I think the holding is contrary to the evidence that the Newton Trust Company knew, or under the circumstances was chargeable with knowledge, that the note in question was an illegal or invalid instrument. I think that the knowledge of Searing, although one of the investment committee, who was, as the evidence conclusively shows, engaged in a scheme to foist upon the trust company for his own purposes paper which he knew was invalid, was not chargeable or imputable to the trust company, and therefore that the trust company took such note and all the renewals thereof in good faith, and that the defendant, through its treasurer having put such note upon the market, which could not be distinguished from other notes which clearly he was authorized to execute, viz., those necessary in the ordinary transaction of its business, is liable to the Newton Trust Company, or its assignee, upon the note executed and delivered by its treasurer.

In any event, the purpose of Searing was fraudulent, in that his intent was to procure the note to be discounted to pay the obligations of himself or his company to Welch, which was equally as fraudulent as against his bank as if he had determined in advance of receiving the proceeds of the note to apply such proceeds to his own use.

I conclude that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

KRUSE, J., concurs.